THE STATE OF WASHINGTON, *Respondent,* v. TOMMY ED-
WARD BASFORD, *Appellant.*

*Velikanje, Moore, Countryman & Shore* and *John A.
Rossmeissl,* for appellant.

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Patrick
H. Olwell, Deputy,* for respondent.

PETRIE, J.—The defendant appeals from an order denying
his motion for a new trial following his conviction by ver-

dict of a jury of the crime of grand larceny. The specific crime charged was that of receiving, concealing and withholding stolen property as set forth in RCW 9.54.010 (5).

He has specified four assignments of error: (1) that the court erred in denying his motion to suppress several of his statements, one made shortly before his formal arrest and others within a few minutes following arrest; (2) that the court erred in denying his motion to suppress evidence seized under authority of a search warrant at his mother's residence; (3) that the court erred in denying his motion to exclude from the courtroom during his trial a deputy sheriff who was conspicuously armed; and (4) that the court erred in denying his motion for new trial based on the first three assignments of error.

The facts surrounding the defendant's arrest are essentially as follows: In the early morning of December 28, 1967 two McCulloch chain saws were stolen from a hardware store in Yakima County. On December 29, 1967 the owner of the store advised the Yakima police he had received an anonymous telephone call indicating that a chain saw answering the description of one of the stolen saws had been seen at the Boise Cascade wood lot during the day of the 28th in the possession of two men driving an old green Ford truck, flatbed type with side racks. The caller left the impression that the two men would return to the wood lot on December 29th. The caller did not identify the two men.

Acting upon this information on the morning of December 29, four police officers in two police cars entered the wood lot area. This appears to be a fairly extensive area filled with piles of mill wood and log scraps open to those who care to cut and gather the same. A third police car appears to have been parked in the general vicinity but was on the freeway beyond the wood lot area. Two officers in one of the cars, seeing a green truck generally answering the description provided by the anonymous caller, drove near to it and stopped their car. The officers got out and approached the defendant and his cousin who were with the truck. Two officers in the other car subsequently

stopped and also began to approach the truck. Prior to the arrival of the latter two officers, but apparently while they were in sight of the defendant and obviously approaching the immediate vicinity, one of the first officers noticed a chain saw lying on the ground. He asked the defendant, "Is this your chain saw?" The defendant replied, "Yes, it is." The officer then asked the defendant's permission to examine the saw. Having obtained such permission, the officer picked it up and ascertained that the serial number matched the serial number of one of the stolen saws. The defendant was thereupon arrested, placed in a police car and advised of his constitutional rights pursuant to the requirements set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The defendant does not challenge (1) the fact of recital of those rights at that time, (2) his intelligent understanding of them, or (3) their sufficiency.

After being so advised, he was asked how he acquired the saw. His reply, later retracted, was that he purchased it a couple of "days ago" from a "wino" at a street corner in Yakima.

The foregoing facts were elicited at a CrR 101.20W hearing in Superior Court for Yakima County to ascertain the admissibility of the defendant's several statements. The court determined that both statements were admissible as evidence at the defendant's trial.

The crux of defendant's assignment of error is that at the time when the four officers approached him, (1) the investigation no longer remained a general inquiry into an unsolved crime but had begun to focus on a particular suspect and (2) in any event, the show of force had effectively deprived him of his freedom of action. In either case, he contends, in accordance with recent decisions of the United States Supreme Court, *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964); *Miranda v. Arizona, supra,* and *Orozco v. Texas,* 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095 (1969), he was "under arrest" and his response to questions propounded by police officers prior to

his being advised of basic constitutional rights, would be inadmissible as evidence against interest at his trial. Further, he contends, because of the taint of illegality surrounding the first statement, the subsequent statements are also inadmissible even though they were given after he had been advised of his constitutional rights.

 Attempts to delineate a sharp line of demarcation, specifying the point at which a general inquiry into an unsolved crime ceases to exist and immediately becomes custodial interrogation, must necessarily proceed upon a case-by-case basis. The penumbrum of doubt probably will never be reduced to a paper-thin line, clearly recognizable in any given factual circumstance by all jurists, let alone understandably apparent to all law enforcement officials, who must act under the heat, tempo and pathos of the moment. Suffice it to say that in the present circumstances, when the police officers were pursuing a vaguely descriptive lead furnished by an anonymous caller, which led them into an area where practically any adult male was apt to be in possession of a power saw, sufficient cause to effect an arrest did not exist until such time as it had been reasonably well established that an item of contraband had been sufficiently identified and in some reasonable manner associated with the person to be arrested.

One certain method to establish identity of a stolen saw, although not the only avenue available under all circumstances, is to examine its serial number. The police officer who effected the arrest did not engage in coercive questioning. His actions, in asking the prefatory question concerning ownership, were neither overbearing to the point of intimidation nor overzealous to the point of trickery. Much better, than not, that law enforcement officials be granted the opportunity to seek permission of a purported owner of property before seizing and examining the same. No court, so far as we are aware, has yet imposed sanctions upon efficient police investigation so long as the methods employed are consistent with recognized standards of human dignity and personal decency. The police officer who ar-

rested Tommy Basford on December 29, 1967, did not contravene those standards.

Defendant contends, however, that the convergence of four police officers upon the scene, in and of itself, effectively deprived him of his freedom of action, and therefore constituted his "arrest" prior to any question having been asked or answer given. In support of this contention he cites *Orozco v. Texas, supra.* In *Orozco,* four officers entered the defendant's bedroom and began to question him concerning his activities of some four hours prior thereto and also concerning his ownership of a pistol. The defendant appears to have been a specifically identified individual and one of the officers testified that he was not free to go where he pleased, but was "under arrest" from the moment he gave his name. The court reversed his conviction because at his trial one of the officers was permitted to testify as to the defendant's responses to questions propounded by the officers about incriminating facts prior to warning him of his rights as set forth in *Miranda v. Arizona, supra.* We have carefuly reviewed *Orozco* and find that Reyes Orozco's "freedom of action" at the time of his interrogation was considerably more restricted than was that of Tommy Basford when he was asked about ownership of the chain saw.

The trial court quite properly permitted the arresting officer to relate to the jury that on December 29, 1967, Tommy Basford responded, "Yes, it is", after having been asked, "Is this your chain saw?" The allowance of such testimony did not constitute a violation of the defendant's constitutional rights, state or federal, that he not be compelled in any criminal case to be a witness against himself.

The defendant acknowledges that subsequent statements were made after he had been advised of his constitutional rights as set forth in *Miranda.* His only objection to the use of these subsequent admissions against interest was that the "primary taint" of the pre-arrest statement carried over to the subsequent statements; and the intervening recital of Miranda warnings was insufficient to permit the state to

use either the original or the subsequent statements. Having held that there was no primary taint, there was nothing to give rise to imperfection in the subsequent statements.

Defendant next assigns error to the court's denial of his motion to suppress evidence seized subsequent to issuance of a search warrant. In the afternoon of December 29, one of the officers present at the time of arrest—actually an investigator for the office of prosecuting attorney for Yakima County—sought issuance of a search warrant from a magistrate in Yakima, based upon an affidavit of the officer declaring that he had probable cause to believe a stolen chain saw was in the residence of the defendant's mother. After hearing the officer's testimony, the magistrate issued the warrant. No record of the testimony was kept and the officer's affidavit does not contain a recital of the facts upon which the officer based his conclusion of probable cause. Armed with this search warrant, several officers entered Mrs. Basford's residence and found—among other items— the other stolen chain saw under a bunk bed in one of the bedrooms. Evidence of this finding was presented to the jury at the defendant's trial.

The defendant does not challenge the sufficiency of the officer's probable cause. He does, however, challenge the procedure utilized to obtain the warrant on the two-fold grounds that no record of the proceedings was kept and the insufficiency of the officer's affidavit used in seeking the warrant.

We are advised that the procedure for issuance of a search warrant currently employed in Yakima County does now include (1) the making and preserving of a permanent record by the issuing magistrate and (2) the requirement that the affidavit which forms the basis for seeking the warrant must encompass the underlying circumstances upon which the affiant bases his contention for probable cause. In *State v. Walcott*, 72 Wn.2d 959, 435 P.2d 994 (filed on December 28, 1967), the Supreme Court of this state expressed a preference that these latter procedural steps be taken, but did not specifically declare that a procedure

which did not include them contravened either the fourth amendment to the United States Constitution or article 1, section 7 of the Constitution of the State of Washington. In view of the chronological proximity of the filing of *Walcott* to the issuance of the search warrant in the case at bar we are not inclined at this time to condemn the procedures utilized herein. The trial court did not commit error at the preliminary hearing by denying the defendant's motion to suppress evidence seized during the search of Mrs. Basford's residence.

The defendant's third assignment of error relates to the presence, during trial, of a uniformed deputy sheriff, obviously armed, seated in the courtroom (apparently within the enclosed area usually reserved for counsel and their clients). He contends that the presence of such an officer created a prejudicial inference that the defendant was a dangerous man and thus denied him his right to a fair trial. When the presence of this officer was specifically brought to the attention of the trial court, he was advised that the defendant had been previously convicted of the crime of robbery and that an appeal from such conviction was then pending before the Supreme Court. Upon being so advised, the trial court refused to exclude the officer from the courtroom.

While he is presiding at a trial, the trial court is required to direct, control and regulate the proceedings as its chief officer. True, he has a grave responsibility to insure that a defendant charged with commission of a crime be given a fair and impartial trial. However, he has an equally grave responsibility to protect the other officers of the court as well as the members of the public in attendance. He must at all times maintain proper decorum and provide an atmosphere consistent with judicial dignity. When requested to perform a specific act which calls for a possible balancing of these grave responsibilities upon the scales of justice, the court must necessarily choose from among a wide variety of possible choices all within the permissible areas of judicial discretion. In the instant case, the record is

devoid of any proof that jurors were prejudiced by the presence of the deputy sheriff. We cannot say that the trial judge abused the discretion with which he has been cloaked. *State v. Sawyer,* 60 Wn.2d 83, 371 P.2d 932 (1962); *State v. Ollison,* 68 Wn.2d 65, 411 P.2d 419 (1966).

There being no remaining grounds upon which to base the defendant's fourth assignment of error, denial of his motion for new trial, the judgment is affirmed.

ARMSTRONG, C. J., and PEARSON, J., concur.