[No. 9735-1-I. Division One. January 10, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. LOUIS EUGENE RUSSELL, *Appellant.*

*Peter Mair,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Marilyn Pearson* and *Chris Quinn–Brintnall, Deputies,* for respondent.

SCHOLFIELD, J.—Defendant Louis Russell appeals his convictions for murder in the second degree, attempted murder in the first degree, and rape in the first degree. We affirm.[1]

Defendant was originally charged with murder in the first

---

[1]This court previously filed an opinion affirming Russell's conviction. After the opinion was filed, Russell's counsel advised the court that one of the judges had, while a superior court judge, ruled on a motion connected with Russell's case. The appeal was therefore set for reargument before a new panel.

Although we address more specifically certain points raised by Russell's motion for reconsideration, we have adopted in substantial part the prior opinion written by Judge Corbett as the opinion of this panel.

degree (premeditated). The first jury, which was instructed on the lesser included offense of murder in the second degree, found the defendant not guilty of first degree murder, but the jury deadlocked and was unable to reach a verdict on the other counts. After a declaration of mistrial, the prosecutor amended the information to charge second degree murder, RCW 9A.32.050(1)(a), as well as the other counts of attempted murder and rape as originally charged. On the day set for trial, the State was permitted to amend the information to add felony murder, RCW 9A.32.050–(1)(b), as an alternative means of committing second degree murder.[2]

The defendant, a career soldier stationed at Fort Lewis, had an unblemished record. He related an intricate combination of circumstances leading to the death of the victim. Ultimately they ended in his going to the victim's apartment where he was promised an introduction to "a girl." He testified to going to the bedroom of an unidentified woman and being left there by the victim. The woman offered to have sexual intercourse with him. When they were through, the victim returned, became enraged and stabbed the woman in the stomach. The defendant tried to run from the apartment, but was confronted by the victim. The defendant testified that he was able to wrest the knife from the victim and stab him in self–defense. Autopsy reports indicated the victim received four stab wounds in the chest and abdomen and three in the back. The decedent had a blood alcohol level of .27 percent. The defendant was apprehended as he sped from the decedent's home.

The woman, who was the victim's wife, told a different

---

[2]RCW 9A.32.050 provides:

"(1) A person is guilty of murder in the second degree when:

"(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or

"(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . ."

version of the incident. She testified that she was awakened late at night and introduced to the defendant by her husband. Later, she was reawakened by her husband who told her he was going to sleep on the couch. After some time she arose to go to the bathroom and encountered the defendant in the hall. According to her testimony, he tore off her nightgown, held a knife to her back, and raped her on the floor. She testified that he led her into the bathroom where he verbally degraded, kicked, and stabbed her. She tried to grab the knife from him and was severely injured. Finally he pulled away and ran down the stairs. After she heard a car "squeal" out of the parking lot, she called an emergency number for an aid car. The physical evidence at the scene was in some conflict with both versions of what had occurred.

Russell first contends it was error for the trial court to permit amendment of the information after his first trial. He argues that such action violated federal and state constitutional double jeopardy prohibitions. Defendant further contends that the trial judge erroneously denied his motion to dismiss the additional charge of second degree felony murder, RCW 9A.32.050(1)(b). He asserts that adding the alternative method of second degree murder violates the "underlying idea" of the double jeopardy clause that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual". *Green v. United States*, 355 U.S. 184, 187, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957). We do not agree.

 That the defendant was neither convicted nor acquitted of any charge except first degree murder is fundamental to analysis of the double jeopardy issue. It is clear that a mistrial does not always have the same effect as an acquittal. If a jury is unable to agree upon a verdict, a discharge is necessary in the proper administration of justice and does not act as a bar to retrial. *State v. Jones*, 97 Wn.2d 159, 162–63, 641 P.2d 708 (1982); *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962). The discharge of the jury in defendant's first trial, following its inability to

reach agreement on murder in the second degree, does not constitute a bar to the defendant's trial for second degree murder.

 Defendant contends that even if amendment were permissible under a theory that lesser included offense instructions constructively amend an information, *see* RCW 10.61.003, RCW 10.37.015, the provisions of RCW 10.43.020 and RCW 10.43.050[3] preclude amending an information after an acquittal. We do not agree.

As was recognized in *State v. Barton*, 5 Wn.2d 234, 237–38, 105 P.2d 63 (1940), the language of what is today RCW 10.43.020 merely restates constitutional double jeopardy provisions. The same may be said of RCW 10.43.050. A conviction or acquittal operates, under RCW 10.43.020, as "a bar to *another* indictment or information". (Italics ours.) It does not bar a new proceeding under the *original* information as to offenses charged but upon which no adjudication was made. Also, both statutes are predicated upon the defendant's acquittal or conviction "upon an indictment or information", rather than acquittal or conviction of a particular offense or offenses charged in the indictment or information. The statutes contemplate a final adjudication as to each offense charged. If the jury fails to reach a verdict as to each offense charged, the defendant has not been acquitted or convicted "upon" the indictment or information. RCW 10.43.020 and RCW 10.43.050 do not preclude amendment of the information against defendant.

Allowing amendment of the original information is a

---

[3]RCW 10.43.020 reads:

"When the defendant has been convicted or acquitted upon an indictment or information of an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment or information for the offense charged in the former, or for any lower degree of that offense, or for an offense necessarily included therein."

RCW 10.43.050 reads, in pertinent part: "Whenever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof."

matter addressed to the sound discretion of the trial court. CrR 2.1(d). Amending an information to include an alternative means of committing a crime formerly charged after a mistrial on the original charge is permissible if substantial rights of the defendant are not prejudiced. *State v. Aleshire,* 89 Wn.2d 67, 71, 568 P.2d 799 (1977); CrR 2.1(d).

██ Defendant contends, however, that because intent to kill is not an element of second degree felony murder, RCW 9A.32.050(1)(b), but is an element of second degree murder, RCW 9A.32.050(1)(a), *State v. Wanrow,* 91 Wn.2d 301, 588 P.2d 1320 (1978), the allegations describe separate and distinct criminal offenses rather than alternative means of committing second degree murder. We do not agree.

*State v. Wanrow* concerned the applicability of the merger doctrine to second degree felony murder. That court did not decide whether the Legislature created one or more criminal offenses. That murder and felony murder of the same degree *do* represent alternative means of committing the same crime is indicated in *State v. Cadena,* 74 Wn.2d 185, 196, 443 P.2d 826 (1968) (second degree murder and second degree felony murder) and *State v. Talbott,* 199 Wash. 431, 437–38, 91 P.2d 1020 (1939) (first degree murder and first degree felony murder).

Our Supreme Court has set forth the factors to be considered in determining if the Legislature intended to define a single crime which may be committed by different means or to define two crimes as follows:

> [T]here may be many factors that will aid the court, such as [1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.

*State v. Arndt,* 87 Wn.2d 374, 379, 553 P.2d 1328 (1976), quoting *State v. Kosanke,* 23 Wn.2d 211, 213, 160 P.2d 541 (1945). *Accord, State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982). Applying those factors to RCW 9A.32.050 demonstrates that the Legislature intended to specify

alternative means of committing a single crime.

The Legislature placed both RCW 9A.32.050(1)(a) and (b) under the title "Murder in the Second Degree." Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.32.050, p. 834. The readily perceivable connection between the acts set forth is a common object: causing the death of another person. The methods of committing second degree murder are not repugnant to each other; proof of an offense under one subsection does not disprove an offense under the other subsection. Therefore, it is immaterial that RCW 9A.32-.050(1)(a) and (b) contain different elements. The prohibited acts may inhere in the same transaction, although they are not so nearly indistinguishable as the acts considered in *State v. Arndt.*

Because the amended information alleges only an alternative means of committing second degree murder, there was no violation of CrR 3.3, the speedy trial rule, or double jeopardy rules. *State v. Aleshire, supra.*

Defendant additionally contends CrR 4.3(c)(3)[4] bars his retrial for second degree felony murder because it is a "related offense" to the second degree intentional murder for which he was formerly "tried." *See State v. Anderson,* 96 Wn.2d 739, 638 P.2d 1205 (1982). We do not agree.

The purpose of CrR 4.3(c)(3) is to protect defendants against successive prosecutions, for essentially the same conduct, employed by a prosecutor to hedge against an unsympathetic jury in the first trial, to place a "hold" on a person sentenced to imprisonment, or to harass defendants by a multiplicity of trials. *State v. Dailey,* 18 Wn. App. 525, 527 n.2, 569 P.2d 1215 (1977). The rule's protections extend to defendants who have formerly been "tried" for a related offense. If a defendant's jury is discharged in the interests of justice, that defendant has not been "tried" for

---

[4]CrR 4.3(c)(3) provides, in pertinent part:

"A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for joinder of these offenses was previously denied or the right of joinder was waived . . ."

purposes of CrR 4.3(c)(3) as to the charges left unresolved by the jury. When discharge of the jury cannot be attributed to those prosecutorial tactics against which CrR 4.3(c)(3) is aimed, the purpose of the rule has not been frustrated. It was within the sound discretion of the trial judge to permit amendment of the information and we will not disturb his decision on appeal.

The defendant next assigns error to the court's refusal of his proposed instructions 11 and 13.[5]

Defendant cites *State v. Huff*, 76 Wn.2d 577, 581, 458 P.2d 180 (1969) and *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974) for the proposition that in certain cases a specific instruction on witness credibility is necessary. Defendant claims that the decedent's wife dramatically changed her testimony in the second trial, and the credibility instruction given by the court was insufficient to allow the defense to attack her inconsistent testimony. However, any discrepancies in testimony were clearly brought out in cross examination by defense counsel who was then able to argue his theory regarding her credibility under the court's instruction 1.[6]

---

[5]Proposed instruction 11 reads:

"If, in considering the evidence, you believe that any witness has wilfully testified falsely on any material matter, then you are at liberty to disregard the testimony of such witness entirely, except insofar as the same may be corroborated by other competent or credible proof in the case."

Proposed instruction 13 reads:

"Evidence has been received to the effect that a witness made a prior statement which is inconsistent with, or contrary to, that witness' testimony in court. Such evidence may be taken into consideration in weighing that witness' testimony and in determining his or her credibility, but for that purpose only.

"Such prior statement is not evidence of the facts then stated, or proof of the truth of such facts, and should not be considered by you as such. You are to use such prior statement only in considering the credibility of that witness' testimony in court."

[6]Instruction 1 reads, in pertinent part:

"You are the sole judges of the credibility of the witnesses and of what weight is to be given the testimony of each. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to observe, the witness' memory and manner while testifying, any interest, bias or prejudice

■ A specific instruction should not be given when a general instruction adequately explains the law and the parties are able to argue their theories of the case within the general instruction. *State v. Stone,* 24 Wn. App. 270, 273, 600 P.2d 677 (1979). Further, the number of instructions to be given on a subject rests within the discretion of the trial court. *State v. Williams,* 22 Wn. App. 197, 200, 588 P.2d 1201 (1978). An additional, more specific, instruction on this subject would have been unnecessary and the court's refusal to give the requested instructions was not error.

The defendant assigns error to the failure of the trial court to grant a motion for mistrial at the end of the case. The motion was based upon two incidents that occurred during the trial. In the first incident, the court asked to see counsel, the court reporter, and the defendant at the sidebar. As the defendant started toward the bench, the courtroom guard, apparently a deputy sheriff, stopped him and said, "Russell, where are you going?" Defendant claims this created a prejudicial inference for the jury that he was a violent man and he was thereby deprived of the presumption of innocence.

■ Defense counsel, however, failed to request a cautionary instruction at the time of the incident, although invited to do so by the court. When an error can be obviated by jury instruction, a defendant waives the error by failing to request such an instruction. *State v. Bonner,* 21 Wn. App. 783, 793, 587 P.2d 580 (1978), citing *State v. Ollison,* 68 Wn.2d 65, 411 P.2d 419 (1966).

■ It was within the court's discretion to keep a deputy in the courtroom as a security measure. *State v. Hartzog,* 96 Wn.2d 383, 396, 635 P.2d 694 (1981). Absent a showing that the defendant was denied a fair trial due to this isolated incident, there is no constitutional error. *State v.*

the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight."

*Basford,* 1 Wn. App. 1044, 1050, 467 P.2d 352 (1970).

The second incident was the prosecutor's allegedly improper rebuttal argument.[7] Although the record of the defense argument is not before us, it appears that the prosecutor was responding to argument by defense counsel. Defense counsel did not object at the time.

In general, a defendant's failure to make a timely objection to statements in prosecutorial argument precludes the defendant from raising them on appeal. *State v. Huson,* 73 Wn.2d 660, 664, 440 P.2d 192 (1968); *State v. Wilson,* 29 Wn. App. 895, 903 (1981). Insofar as the prosecutor's argument is alleged to have denied Russell his constitutional rights to a fair trial, we conclude Russell has not demonstrated such prejudice. Thus, the trial judge did not abuse his discretion in denying Russell's motion for a mistrial. *State v. Jefferson,* 11 Wn. App. 566, 569–70, 524 P.2d 248 (1974).[8]

---

[7]The prosecutor stated:

"At this point in the case, I get to respond to some of Mr. Mair's points that he made during his closing argument.

"First of all, I would like to address what he termed as the presumption of innocence, the fact that such a presumption exists in every case. And he is correct in that. Presumption of innocence, and the State's burden of proof beyond a reasonable doubt [exist] in every criminal trial.

"And it has existed in every criminal case since the Constitution. And it has existed in every case in which a defendant has been found guilty as charged to crimes which he has committed.

"It is not unique to this case. Presumption of innocence or reasonable doubt are not operative in State vs. Russell and that case only but in every criminal case. Those are important primary factors presented to the jury in every case in which there has been a conviction of a person charged with a crime, and the State has accepted that burden and overcome that burden of the presumption of innocence, and the jury has found the defendant guilty beyond a reasonable doubt.

". . .

"The State gladly accepts the burden of proving each of the elements beyond a reasonable doubt, and the State gladly accepts the presumption of innocence, and if you apply those standards of the law, as the judge instructed you, in considering the evidence, you can reach only one verdict."

[8]We observe, however, that argument based on what juries in other cases have done when confronted with similar facts or comparable instructions tends to needlessly inject collateral matters into a case. Such argument is subject to abuse and should be discouraged.

The defendant also assigns error to the trial court's refusal to admit evidence of his acquittal of first degree murder.

▬▬▬ The issue of premeditation was present in the first trial but not in the second. The prosecutor's theory of the case in the second trial was that the defendant either intended to kill the victim or that he caused the death by committing the crime of assault in the second degree on the victim. Therefore, there was no evidential determination by the jury in the first degree murder trial that would be binding upon the jury in this trial.

The trial court also properly refused the evidence of acquittal under ER 403.[9]

> [E]vidence of the acquittal would have merely taken a jury down a side track, thus tending to confuse and mislead them on the crucial issue.

*State v. Tarman*, 27 Wn. App. 645, 652, 621 P.2d 737 (1980). The defendant has failed to show how evidence of his prior acquittal would have "clarified the theory of facts surrounding [the] death." Brief of Appellant, at 42. The evidence was properly excluded by the trial court as more prejudicial than probative. *State v. Stevenson*, 16 Wn. App. 341, 346, 555 P.2d 1004 (1976).

Defendant contends that the trial judge improperly restricted cross examination regarding a certain entry made in the diary of decedent's wife. We do not agree.

Other entries in her diary were introduced by the defendant to support his theory of a disintegrating relationship between the decedent and his wife. The court properly allowed this evidence under ER 803(a)(3) to show her state of mind at the time of the declaration. The diary entry refused by the court referred to the wife's suspicion that the decedent was a thief. In sustaining the objection to

---

[9]ER 403 reads:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

this entry, the trial court stated:

> I would agree that an individual act of suspicion—interjected into the trial in that fashion—that the deceased was a thief, if relevant, is prejudicial beyond its value. The value, as I understand it, is to indicate that this is a rocky marriage, and I can see that, with the other evidence, this is not of that much value.

It was within the court's discretion to exclude any portion of the diary that tended to mislead, distract or confuse the jury. ER 403. *State v. Stevenson, supra* at 346.

The defendant also assigns error to the admission of testimony of a mutual friend of the decedent and his wife. This testimony was offered by the prosecuting attorney to rebut the evidence contained in the diary indicating that the marriage had broken down. It was properly admitted as evidence of the victims' states of mind at the time the statements were made to the witness. ER 803(a)(3).

In its instructions concerning attempted first degree murder of the wife, the court instructed on premeditation as an element.[10] Defense counsel objected to the giving of this instruction and requested the addition of language requiring "a substantial period of time." The time required for premeditation may be very short, provided that it is an "appreciable period of time." *State v. Smith,* 12 Wn. App. 720, 732, 531 P.2d 843 (1975). No fixed or definite period of time need elapse so long as the jury is informed that some time must elapse sufficient for the defendant to form an intent. *State v. Griffith,* 91 Wn.2d 572, 577, 589 P.2d 799 (1979); *State v. Tikka,* 8 Wn. App. 736, 741, 509 P.2d 101 (1973). The court's instruction was an accurate statement of the law as contained in RCW 9A.32.020. The defendant's requested amendment of the instruction would have caused it to be less correct and was, therefore, properly refused.

---

[10]The pertinent part of the instruction stated: "Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed." Instruction 16.

592

Affirmed.

DURHAM, A.C.J., and CALLOW, J., concur.

Reconsideration denied March 1, 1983.

Review granted by Supreme Court May 10, 1983.