[No. 32226-5-I.    Division One.    August 14, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ZELEKE
KASSAHUN, *Appellant*.

*Michael C. Nance*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kerry J. Keefe, Deputy*, for respondent.

KENNEDY, A.C.J. — Zeleke Kassahun was charged with second degree murder of Jesse Walker by the alternate means of intentionally causing his death or felony murder in the course of committing second degree assault upon

Walker with a handgun.[1] By a second count alleged to be based on the same conduct and part of a common scheme or plan and so closely connected in respect to time, place and occasion as to be difficult to separate the proof of one count from the other, Kassahun was charged with second degree assault of Deleava Combs, Walker's girlfriend, by the alternate means of knowingly assaulting her with a handgun or knowingly assaulting her thereby recklessly inflicting substantial bodily harm. These charges were tried to a jury in April 1992. Kassahun raised the defenses of accident and self-defense, as to both counts. That jury "hung" on the second degree murder charge and acquitted Kassahun of second degree assault of Combs.

The second degree murder charge was tried to a new jury in November 1992. Kassahun again raised the defenses of accident and self-defense. The second jury heard essentially the same evidence regarding the alleged assault of Deleava Combs as had the first jury. The second jury convicted Kassahun of second degree murder. Kassahun appeals, contending that the trial court erred in excluding from the second trial evidence of his acquittal at the first trial of second degree assault of Combs. Kassahun argues that this error was compounded by the giving of the first aggressor instruction, because the State repeatedly pointed to the alleged assault of Combs as the first aggression, in its effort to overcome Kassahun's self-defense claim. Kassahun also points to three instances of alleged prosecutorial misconduct. We will discuss one of these contentions in the published portion of this opinion. Kassahun's remaining contentions will be discussed in the unpublished portion of the opinion.

We reverse and remand for a new trial. The trial court erred in excluding evidence of Kassahun's acquittal of second degree assault of Combs. This error, which we

---

[1] In the information, Mr. Walker's first name is spelled Jesse. In the instructions and verbatim report of proceedings his first name is spelled Jessie. When quoting from the instructions and report of proceedings, we will use the spelling there found.

review in light of the evidence at the second trial, the giving of the first aggressor instruction, the absence of an issue-preclusion instruction and the State's closing and rebuttal argument, could have resulted in the rejection of Kassahun's self-defense claim based on a jury finding of first aggression toward Combs, a theory which was rejected by the jury at the first trial. Less likely, but still within the realm of reasonable possibility, given the wording of the "to convict" instruction, the jury could have convicted Kassahun of felony murder based on the alleged second degree assault of Combs, even though the first jury acquitted Kassahun of that assault.

Thus, the evidentiary error, combined with instructions which failed to preclude the jury from reconsidering whether Kassahun was first aggressive toward Combs and committed second degree assault of Combs, led to the inadvertent violation of Kassahun's constitutional right to be free from double jeopardy and from relitigating ultimate issues of fact previously determined in his favor.

### FACTS

In August 1991, Kassahun shot and killed seventeen-year-old Jesse Walker outside the Texaco Rainier Express Lane, a gas station and convenience store co-owned by Kassahun and two other partners. About thirty minutes before the shooting, Jesse Walker, Deleava Combs and three of their friends traveled to an alley way near the store in a car driven by Combs. While Walker, Combs and one of their friends waited in the car, the other two friends entered the store and tried to steal some beer. Kassahun thwarted the theft by pulling out a gun and threatening one of the would-be thieves. As Kassahun was confronting that individual, Walker appeared and threw a beer bottle at Kassahun, but failed to strike him with the bottle. The individual Kassahun had held at gunpoint threatened to "get" Kassahun on the street, and then ran away. The police were called, but failed to come to the scene. Kassahun put the handgun into the pocket of his jeans and returned to work inside the store.

About ten minutes before the shooting, Walker and Combs entered the store. According to Kassahun, one of the co-owners told Kassahun that Walker was the man who had threatened the co-owner during a previous encounter at the store. Kassahun ordered Walker to leave the store. Kassahun testified that Walker and Combs then attacked him. Walker tried to break a chair over his head and hit him with a cane which Walker had grabbed from shop co-owner Makonnen Asfaw with enough force to break Asfaw's finger. During the attack by Walker, Combs was shoving, pushing and hitting at Kassahun, as well.

Asfaw and his wife, who worked as a clerk in the store, gave statements to the police which supported Kassahun's version of these events. Asfaw and his wife did not testify at the first trial. However, after the first trial, Asfaw, Asfaw's wife and Kassahun had a falling out. Asfaw and his wife then gave statements to the police which supported the State's theory of the case. Asfaw testified at the second trial that Kassahun struck the first blow, slapping Walker in the face. Asfaw's wife testified that after the shooting and while awaiting the arrival of the police, Kassahun told her and the store co-owners that all must tell the police the same story, i.e., that the shooting was in self-defense, or they all would lose everything.

Combs testified that Kassahun accused Walker of stealing and told him to leave the store. She looked away, and when she looked back she saw Walker on the floor being hit and kicked by the store owners. When she tried to intervene, Kassahun hit her on the side of the head with a handgun, breaking the skin and causing bleeding.

A customer who was in the store at the time of this altercation testified that she saw Kassahun waving a gun and pointing it at Walker and Combs. Kassahun then hit Combs in the head with the gun. At this, Walker became angry and invited Kassahun to put down his gun and fight like a man. The customer then left the store. While still in the parking lot, she saw Walker and Kassahun outside

the store. Kassahun raised his arm and pointed the gun at Walker. The customer did not see the shooting, but heard the gunshot.

Walker and Combs left the store through the front door. Combs testified that she went to a pay phone to call for help. Kassahun testified that as he tried to lock the door behind Walker and Combs, Walker tried to push his way back in and to take the gun away from Kassahun. Walker and Kassahun ended up outside the convenience store where they were seen by nine witnesses who occupied three different vehicles.

Walker told Kassahun that he did not have to hit his girlfriend and challenged Kassahun to put down the gun and fight. Walker took off his outer shirt, threw it on the ground, balled up his fists and danced around like a boxer. At one point, he picked up a large, cylindrical outdoor ashtray and threw it—Kassahun and some witnesses say he threw the ashtray toward Kassahun; other witnesses say he threw it away from Kassahun. Moments later, Kassahun shot Walker. The bullet entered Walker's eye, passed through his brain and exited the back of his head at a slightly downward angle. Walker died immediately. Forensic evidence indicated that the gun was fired from a distance of eighteen to twenty-four inches.

Kassahun initially told police that the gun discharged accidentally when Walker tried to grab it from Kassahun's pocket. He testified, however, that he pointed the gun in self-defense and backed away, but that Walker kept moving forward, trying to get the gun. Kassahun remembered pulling the trigger, but this was not a volitional act. He was terrified that Walker would get the gun and use it to kill him and the other shopkeepers, but he had not intended to kill Walker.

When questioned by the prosecutor about hitting Combs on the head with the gun while the group was still inside the store, Kassahun responded that he had been acquitted of that charge. The trial judge ordered the response stricken and instructed the jury to ignore it. This was con-

sistent with the trial court's earlier ruling denying the defense request that the jury be told that Kassahun had been tried for and acquitted of second degree assault of Combs.

Without defense objection, the jury was given the first aggressor instruction found at WPIC § 16.04. In closing argument, the prosecutor initially pointed to the slapping of Walker as the act which provoked Walker's belligerent response. Later, however, the prosecutor argued that anger, not fear, was the emotion that led Kassahun to crack Deleava Combs along side the head with his gun, and that Walker had a right to defend against Kassahun's attack.[2] In rebuttal argument, by way of response to the defense argument that the evidence supported acquittal based on excusable or justifiable homicide, the prosecutor said:

> The law neither excuses nor justifies what happened. The defendant by his actions created the belligerent response from Jessie Walker by beating him up and cracking his girlfriend across the head. He can not ask you to excuse or justify his actions.

Report of Proceedings, November 25, 1993, at 1228.

The "to convict" instruction stated that the jury could convict Kassahun of the felony murder means of committing second degree murder if the State proved beyond a reasonable doubt that Kassahun:

> was committing or attempting to commit the crime of assault in the second degree and caused the death of Jessie A. Walker, who was not a participant in the crime, in the course and in furtherance of such crime, or in immediate flight from such crime.

Clerk's Papers, at 204. The defense did not object to the

---

[2]The jury was instructed that if a person reasonably but mistakenly believes himself or another person in his presence to be in imminent danger of great bodily injury he has the right to defend against the perceived danger by the use of reasonable force. Clerk's Papers, at 199.

The prosecutor told the jury that "self-defense is a two-way street, Jessie Walker had a right to defend against the attack by Zeleke Kassahun . . . ." Report of Proceedings, November 25, 1993, at 1193.

failure of this instruction to specify that to convict Kassahun of felony murder the State must prove that Kassahun caused Walker's death in the course of committing second degree assault upon Walker (not Combs). In arguing the felony murder means, the prosecutor said:

> Now you were just instructed that an assault in the second degree means substantial injury that's inflicted on someone or assaulting someone with a weapon. The mere act of lifting up a gun and pointing it into the face of another person is an assault in the second degree, whether or not that person pulls the trigger.
>
> Did Zeleke Kassahun commit assault in the second degree? Yes. He was waving his gun around inside of the store, pointing it at Jessie Walker when Jessie was on the ground. He continued to wave the gun around and point it in Jessie Walker's face after he had left the store, was no longer on the premises. Did that cause the death of Jessie Walker during the course of an assault? Yes.
>
> No intent to kill is required under a felony murder, so if you, in evaluating the evidence, think that the defendant didn't intend to kill Jessie Walker when he put the gun in his face, you can still convict him of the crime of murder in the second degree if his death occurred during the course of, in furtherance of or in flight therefrom the crime of assault in the second degree.

Report of Proceedings, November 25, 1992, at 1187.

The jury was instructed that an assault is an intentional touching, striking or shooting of another regardless of whether any actual physical harm is done to the person, and also an intentional act with unlawful force which creates in another a reasonable apprehension and fear of bodily injury, even though the actor did not actually intend to inflict bodily injury. The jury was also instructed that a person commits the crime of second degree assault by assaulting another with a deadly weapon or by intentionally assaulting another, thereby recklessly inflicting substantial bodily harm. Clerk's Papers, at 191-92. Identical instructions defining assault were given at the first trial at which Kassahun was acquitted of second degree assault of Deleava Combs.

Before the first trial, Kassahun attempted to obtain evidence from the police of Walker's gang membership and gang activity and that of some of the witnesses who were in the parking lot of the store on the night of the shooting. The State resisted this motion and moved in limine to exclude all mention of gangs and gang activity with respect to Walker and the witnesses. Judge Dubuque granted the State's motion. Thus, Kassahun's discovery motion was denied. Before the first trial, Judge Bates, who presided over both the first and second trials, modified the ruling in limine to allow Kassahun to present testimony as to his own subjective belief that Walker was a gang member. Kassahun's continuing effort to obtain discovery of police records in search of objective evidence to support his subjective belief was unavailing.

Kassahun testified that he had purchased his interest in the store only some three weeks before the shooting. From the outset, the store was plagued by gangs, particularly the Black Gangster Disciples, whose members dressed in black Raider's jackets, and used the store parking lot as a hangout. Kassahun often observed drug transactions taking place in the parking lot. He would have to clean the flower beds of needles every morning. Gang members blatantly shoplifted beer and aluminum foil (to make pipes for smoking cocaine in the parking lot), and if caught in the act of stealing, blatantly defied the shopkeepers to do anything about it.

About two weeks before the shooting, Kassahun's life was threatened by a gang member. Kassahun used a silent alarm in the store to summon the police, who warned him not to use the alarm again, except in a real emergency. Kassahun frequently reported shoplifting incidents by calling 911. He testified that sometimes the police did not respond at all. At other times the response was very slow.

During closing argument the prosecutor said: "[Kassahun] tried to paint a picture of lawless gangs taking over and running the show in the parking lot, everywhere, but where was the evidence of that?" Report of Proceed-

ings, November 25, 1993, at 1198. Kassahun objected on grounds that this was improper argument in light of the motion in limine. The objection was overruled.

Following his conviction of second degree murder at the second trial, Kassahun filed this timely appeal.

## DISCUSSION

### Double Jeopardy/Collateral Estoppel

At the second trial, Kassahun first sought to limit, although not to exclude altogether, the evidence of the assault upon Deleava Combs for which he was acquitted at the first trial, and next sought to have the jury informed that he had been acquitted of second degree assault of Deleava Combs. The State objected to evidence of the acquittal, relying upon *State v. Tarman*, 27 Wn. App. 645, 652, 621 P.2d 737 (1980) (where sole issue at trial for third degree assault was whether officer had probable cause to arrest defendant for driving while intoxicated, trial judge did not abuse discretion by excluding evidence that defendant had been acquitted of DWI; evidence of acquittal would have confused and misled the jury and was irrelevant to crucial issue). The trial judge found *Tarman* persuasive, and excluded the evidence of Kassahun's acquittal of second degree assault of Combs.

*Tarman* is not controlling, and is inapposite, because no question of double jeopardy or collateral estoppel existed in that case. This case also differs from *State v. Russell*, 33 Wn. App. 579, 590, 657 P.2d 338 (1983). In *Russell*, there was no evidential determination by the jury in the first trial that would be binding on the jury at the second trial. As we shall discuss, the situation here is dramatically different.

We think it likely that the trial court's decision to exclude the evidence of Kassahun's acquittal of second degree assault of Combs distracted the court and both counsel from the collateral estoppel/double jeopardy problem in the second trial. Indeed, as the State points out, although Kassahun sought to have the jury informed

of the acquittal, he posed no objection to the first aggressor instruction, or to the wording of the "to convict" instruction, or to the inclusion of the "thereby recklessly inflicting substantial bodily harm" means of committing assault which fit the evidence of the alleged assault against Combs, rather than against Walker. Neither did Kassahun request an issue preclusion instruction informing the jury that, in view of the acquittal, it could not treat the alleged assault against Combs as first aggression negating Kassahun's claim of self-defense or as satisfying the second degree assault element of felony murder.

■ We reject the State's contention that by failing to object to these instructions, Kassahun failed to preserve the constitutional issue for appeal. We deal here with a manifest constitutional error, i.e., one which is "unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed." *See State v. Lynn,* 67 Wn. App. 339, 345, 835 P.2d 251 (1992). Such an issue may be raised for the first time on appeal. *See State v. Scott,* 110 Wn.2d 682, 688, 757 P.2d 492 (1988); RAP 2.5(a)(3). *See also State v. Ellis,* 71 Wn. App. 400, 404, 859 P.2d 632 (1993) (double jeopardy claim may be raised for first time on appeal).

■ The Fifth Amendment guarantee against double jeopardy incorporates the doctrine of collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443. This constitutional guarantee protects a defendant who has been acquitted from having to "run the ga[u]ntlet' a second time." *Ashe,* 397 U.S. at 446 (quoting *Green v. United States,* 355 U.S. 184, 190, 78 S. Ct. 221, 2 L. Ed. 2d 199, 61 A.L.R.2d 1119 (1957).

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous

judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal.

*Ashe*, 397 U.S. at 444 (footnotes and citation omitted). *Accord State v. Morlock*, 87 Wn.2d 767, 557 P.2d 1315 (1976).

Here, our examination of the record of the first trial leads us to conclude that the first jury could not have been persuaded beyond a reasonable doubt that, when Kassahun struck Deleava Combs in the head with the gun he did so intentionally, thereby recklessly causing substantial bodily harm. Neither was the first jury persuaded beyond a reasonable doubt that Kassahun did not act accidentally or in lawful self-defense. Thus, the State did not prove beyond a reasonable doubt that Kassahun was the first aggressor as to Combs. Moreover, the first jury must have had a reasonable doubt that Kassahun intentionally and with unlawful force created reasonable apprehension and fear of bodily injury in Combs, by pointing the gun at her inside the store. These are gauntlets which Kassahun cannot be required to run again, for the first jury necessarily resolved these ultimate facts in Kassahun's favor.

■■ The witnesses generally agreed that Walker's belligerent behavior outside the store resulted from Kassahun having hit Combs on the head with the gun during the altercation inside the store. Walker was heard to complain that Kassahun did not have to hit his girl and to invite Kassahun to put down his gun and fight like a man. Indeed, hitting a young man's girlfriend per se is conduct

reasonably likely to provoke a belligerent response from the young man. But the State, having failed to prove beyond a reasonable doubt at the first trial that Kassahun hit Combs intentionally or unlawfully, that is, that he did not hit her accidentally during a struggle or that he did not employ reasonable force against her in self-defense, is collaterally estopped from arguing, as it did at the second trial, that Kassahun's conduct toward Combs negated his claim of self-defense as to Walker.

The State did not make a similar argument with respect to the second degree assault element of felony murder. Unlike the State's argument that Kassahun was the first aggressor as to both Walker and Combs so that he could not be heard to claim self-defense as to Walker, the State did not point to Kassahun having waved the gun at Combs in support of the second degree assault element of the felony murder means. Instead, the State pointed to the waving of the gun at Walker, both inside and outside the store.

Still, the State's evidence showed that Kassahun waved the gun at both Walker and Combs inside the store. Although the information charged Kassahun with causing Walker's death while knowingly assaulting Walker with a deadly weapon, the "to convict" instruction merely informed the jury that it could convict Kassahun of felony murder if the State proved beyond a reasonable doubt that Kassahun "was committing or attempting to commit the crime of assault in the second degree and caused the death of Jessie A. Walker, who was not a participant in the crime, in the course and in furtherance of such crime, or in immediate flight from such crime[.]" Clerk's Papers, at 204. Based on the evidence and the instructions, and notwithstanding the State's argument, we believe that a rational jury could have believed that Kassahun was justified at pointing the gun at Walker in self-defense, but not at Combs, who testified that she merely tried to intervene when she saw the store owners beating up Walker. We also note that the jury heard evidence that Kassahun hit

Combs in the head with the gun—conduct which clearly fit one of the definitions of second degree assault contained in the jury instructions. Walker was heard to complain that Kassahun hit his girl. A rational jury, following the literal language of the instructions, could reasonably have concluded that Kassahun killed Walker in the course and in furtherance of his supposed crime of second degree assault of Combs, the very act that seemingly provoked Walker's behavior outside the store.

Accordingly, we reverse and remand for a new trial on the charge of second degree murder. By way of further guidance to the trial court, we point out that we have not determined that it was error to admit evidence of what happened to Deleava Combs inside the store. Indeed, it would be difficult to separate the evidence of what took place inside the store between Kassahun, Walker and Combs from what took place outside the store between Kassahun and Walker. Having admitted that evidence, however, it was error to exclude evidence of the acquittal and it was error to fail to instruct the jury as to the issue-precluding consequences of the acquittal. It was not error to give the first aggressor instruction, in that the defendant did not object to that instruction. It was error to give the instruction in language which allowed the prosecutor to argue that Kassahun's first aggression toward Combs negated his claim of self-defense as to Walker. In a situation involving only one passive victim, the "to convict" instruction would have been adequate. Here, however, it was necessary to instruct the jury that the State must prove that Kassahun was committing or attempting to commit the crime of second degree assault of Walker, to avoid violating Kassahun's right to be free of double jeopardy.[3]

---

[3]Given the evidence of two second degree assaults, one against Combs and one against Walker, the open-ended wording of the "to convict" instruction also violated Kassahun's right to jury unanimity and to be tried for the crime of which he remained charged, second degree felony murder of Walker. *Cf. State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980) ("to convict" instruction ef-

### Prosecutorial Misconduct

Having prevailed by motion in limine in its effort to preclude Kassahun from discovering objective evidence of Walker's gang membership and gang activities and that of some of the witnesses who were in the parking lot at the time of the shooting, it was misconduct for the prosecutor to imply in argument to the jury that Kassahun was being untruthful because he failed to offer objective evidence to support his belief that his business was being overrun by gangs. The trial court erred in overruling Kassahun's objection to this argument. Because we are reversing on other grounds, we need not analyze whether this misconduct and trial court error prejudiced Kassahun's right to a fair trial. We simply direct that the misconduct not be repeated at the new trial.

Reversed and remanded for a new trial.

The remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed of public record as provided in RCW 2.06.040.

BECKER, J., and PEKELIS, J. Pro Tem., concur.

fectively split conduct into two separate crimes while information charged only one).