[No. 69792-2.   En Banc.]
Argued February 13, 2001.     Decided May 17, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. JATINDER SINGH
AHLUWALIA, *Petitioner*.

*Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Catherine M. McDowall, Deputy*, for respondent.

SMITH, J. — Petitioner Jatinder Singh Ahluwalia seeks review of an unpublished decision of the Court of Appeals, Division One, which affirmed his King County Superior Court conviction for second degree murder under RCW 9A.32.050(1)(a) upon retrial after a mistrial following a trial for first degree murder (on which he was found "not guilty") and second degree murder (on which the jury could not reach a verdict).[1]

The Court of Appeals concluded the second degree murder instruction given by the trial court was proper; the double jeopardy provisions of the United States and Washington constitutions were not violated when Petitioner was retried for second degree murder after the mistrial; there was sufficient evidence to support the second degree murder conviction; and the community placement sentence was not ambiguous.[2]

Petitioner raises only the double jeopardy question before this court.[3] We granted review.[4] We affirm.

---

[1] *State v. Ahluwalia*, No. 42443-2-I, 2000 Wash. App. LEXIS 535, 2000 WL 349028 (Wash. Ct. App. Apr. 3, 2000). An unpublished opinion of the Court of Appeals may not be cited as authority. RAP 10.4(h).

[2] *Ahluwalia*, slip op. at 8, 10, 13, 15.

[3] Pet. for Review at 1.

[4] Order, Supreme Court of Washington (Oct. 31, 2000).

## QUESTION PRESENTED

The question presented in this case is whether the double jeopardy provisions of the United States and Washington constitutions and RCW 10.43.050 prohibit retrial of Petitioner for murder in the second degree after a mistrial was declared when the jury acquitted him on the charge of murder in the first degree but was unable to reach a verdict on the lesser offense of murder in the second degree.

## STATEMENT OF FACTS

On December 7, 1993 Petitioner Jatinder Singh Ahluwalia was charged by information in the King County Superior Court with one count of second degree murder under RCW 9A.32.050(1)(a) and on June 27, 1997 by amended information with one count of first degree murder under RCW 9A.32.030(1)(a) instead of second degree murder.[5] The case proceeded to trial before a jury on October 1, 1997.[6] The Honorable Steven G. Scott instructed the jury on second degree murder as a lesser included offense to first degree murder.[7] On October 10, 1997 the jury found Petitioner "not guilty" of first degree murder, but was unable to agree upon a verdict on the second degree murder charge.[8] Another trial on the second degree murder charge was begun on December 30, 1997 before the Honorable John M. Darrah.[9] The instructions given by Judge Darrah to the jury included the following:

### Number 4

A person commits the crime of murder in the second degree when with intent to cause the death of another person but

---

[5] Clerk's Papers at 1, 5, 79.

[6] Report of Proceedings (Oct. 1, 1997) at 1.

[7] Clerk's Papers at 39.

[8] *Id.* at 46-49.

[9] *Id.* at 79-81. Report of Proceedings (Dec. 30, 1997) at 1.

without premeditation, he or she causes the death of such person.

## Number 5

To convict the defendant of the crime of murder in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 12th day of October, 1993, the defendant shot Gurjant Pal;

(2) That the defendant acted with intent to cause the death of Gurjant Pal;

(3) That Gurjant Pal died as a result of defendant's acts; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.[10]

The jury found Respondent "guilty" of second degree murder on January 8, 1998.[11]

The charge in this case arose from a shooting on the evening of October 12, 1993 in front of the Greyhound Bus Station on Stewart Street between 8th and 9th Avenues in Seattle.[12]

A witness, Jaswinder Singh Bisal, a taxicab driver, testified that on October 8, 1993 he was in the taxicab line at the Greyhound Bus Station when he observed two other drivers in line, Gurjant Pal and Petitioner Ahluwalia.[13] He testified that five or six taxicabs were lined up at the bus station.[14] He said that usually the driver first in line would pick up

---

[10] Clerk's Papers at 61-62.

[11] *Id.* at 67.

[12] Report of Proceedings (Dec. 30, 1997) at 35, 85.

[13] *Id.* (Jan. 7, 1998) at 26, 27, 28, 34.

[14] *Id.* at 28, 30.

the first passenger and that he was the first driver in line that day[15] and Petitioner Ahluwalia was in line behind Mr. Pal with his taxicab.[16] Mr. Bisal testified he was approached by some persons seeking transportation to Wenatchee, Washington.[17] While he was negotiating the fare, Mr. Pal approached the passengers and tried to take the fare.[18] He did not want to fight with Mr. Pal and told him he could take the fare.[19] Petitioner then approached Mr. Pal and told him not to take the fare.[20] Then Mr. Pal swore at Petitioner and hit him on the head, knocking him to the ground causing his turban to fall off.[21] Petitioner did not fight or make any threats to Mr. Pal.[22] Petitioner then left the bus station.[23]

Several days later, on October 12, 1993, Mr. Bisal saw Mr. Pal at the Greyhound Bus Station.[24] After talking with Mr. Pal he drove some customers on a short trip.[25] When he returned to the bus station it was surrounded by police.[26]

On October 12, 1993 Shaunn Eric McClennan was working as a security guard at the Greyhound Bus Station.[27] He testified he walked past two turbaned men with full beards who were speaking in normal tones in a language other

---

[15] *Id.* at 28, 29.

[16] *Id.* at 30.

[17] *Id.* at 30.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 31-33.

[21] *Id.* at 34, 37.

[22] *Id.* at 36.

[23] *Id.*

[24] *Id.* at 38, 41.

[25] *Id.* at 41.

[26] *Id.* at 42.

[27] *Id.* (Jan. 6, 1998) at 130.

than English.[28] As he passed the two men he heard shots—two or three rounds—turned around and saw a man holding a .38 caliber revolver with blued dark finish out from his body about shoulder height, run to a red taxicab with black lettering, get into it and drive away.[29] When he heard the shots he could see the back of the man who was shot.[30] He was able to partially identify the license number of the taxicab but did not give it to the police officers because someone else had already done so.[31]

Another witness, Robert Bellgardt, was sitting in his parked pickup truck facing the bus station when he heard "three sudden pops" and saw the silhouette of a person falling.[32] He testified that he saw another man walk back to a taxicab, get in and drive down an alley at a rapid speed.[33] He said the man was wearing a red shirt or jacket, a turban, and had a full beard.[34] Later Mr. Bellgardt identified Petitioner Ahluwalia in a photographic montage and in court as the person he observed with the gun.[35]

Another witness, Todd Allen Clark, testified that on October 12, 1993 at approximately 7:00 p.m. he was a back seat passenger in a car driving past the Greyhound Bus Station.[36] He stated he heard a gunshot, looked over and saw a man in a turban shooting a "black man" and then he heard two more shots.[37] He said the man who did the

---

[28] *Id.* at 134. Petitioner's primary language is Punjabi. Language interpreters were provided throughout his trial, although Petitioner insisted upon responding in English to questions directed to him during his testimony.

[29] *Id.* at 132-35, 139.

[30] *Id.* at 144.

[31] *Id.* at 146.

[32] *Id.* (Dec. 30, 1997) at 35-36.

[33] *Id.* at 36.

[34] *Id.* at 41-42.

[35] *Id.* at 41-42, 47.

[36] *Id.* at 86-88.

[37] *Id.* at 86.

shooting ran to a taxicab and drove away.[38] He said the taxicab was red, white and yellow.[39] He stated the man was wearing a dark colored jacket and a turban.[40] He said he gave the license number of the taxicab to police officers when they arrived.[41] He excluded all but two persons in a photographic montage in identifying Petitioner Ahluwalia.

A medical examiner, Dr. Richard Harroff, M.D., Ph.D., King County Department of Public Health, testified that two gunshot wounds "especially a gunshot wound of the head" caused the death of Mr. Pal.[42] Matthew Noedel, a firearms examiner for the Washington State Patrol Crime Laboratory, testified the bullets recovered from Mr. Pal's body were either .38 special or .357 magnum bullets[43] and could have been fired from a Taurus Model 85 .38 caliber stainless steel revolver.[44]

A license and standards inspector for the Seattle Department of Consumer Affairs, Paul Everitt, testified that as of October 1993 there were only two taxicabs that looked like the one driven by Petitioner in the City of Seattle and only one like his with the number 94.[45]

Petitioner Ahluwalia testified at trial in his own defense. According to his testimony, at the time of the shooting he was not at the Greyhound Bus Station, but was on 1st Avenue and Pike Street.[46] He testified he heard on his "CB" that Mr. Pal had been shot.[47] He stated he was afraid he would be accused of the crime because he had recently been

[38] *Id.*

[39] *Id.* at 89.

[40] *Id.* at 93.

[41] *Id.* (Jan. 6, 1998) at 92.

[42] *Id.* at 14-15.

[43] *Id.* at 96, 107.

[44] *Id.* at 111.

[45] *Id.* at 144.

[46] *Id.* (Jan. 7, 1998) at 70.

[47] *Id.* at 72-73.

in a fight with Mr. Pal, that he would be put in jail, and that he did not have bond money to get out or to pay an attorney.[48] He then went home to drop off his taxicab, got into his personal automobile, and drove to California.[49] He stated that from California he took an airplane to Port Arthur, Texas.[50]

Detective Thomas Pike, Seattle Police Department, arrived at the Greyhound Bus Station 15 minutes after the shooting on October 12, 1993.[51] He was given the vehicle license number of UWC 443 which eventually led him to EWC 443 which matched the license number of Petitioner's taxicab.[52] Petitioner's taxicab, a red Silverline taxicab number 94, was found at his apartment in Federal Way within hours.[53] Detective Pike obtained a search warrant for Petitioner's apartment.[54] In the apartment he found an empty Taurus .38 caliber revolver handgun box and a gun cleaning kit sized for both .38 caliber handguns and .357 handguns.[55]

A white Ford Escort, Washington license number 251 ESP, registered to Petitioner, was found abandoned at the Los Angeles, California airport on October 16, 1993.[56]

In February 1997 Petitioner Ahluwalia was arrested in Port Arthur, Texas, where he was living under the name "Ram Singh."[57] He had shaved his beard, stopped wearing

---

[48] *Id.* at 73-75.

[49] *Id.* at 76.

[50] *Id.* at 77.

[51] *Id.* (Dec. 30, 1997) at 162.

[52] *Id.* at 166, 168.

[53] *Id.* at 172.

[54] *Id.* at 169.

[55] *Id.* at 174-75.

[56] *Id.* (Dec. 31, 1997) at 40.

[57] *Id.* (Jan. 5, 1998) at 114, 119.

a turban, and wore a toupee.[58] Detective Rodney Harrison, Port Arthur Police Department, stated that while he was talking with Petitioner at the police station in Port Arthur, Petitioner stated "[a]t least I did this one." Detective Bobby Berry, Port Arthur Police Department, testified Petitioner stated that "he just made some mistakes, but he wanted to do the right thing."[59] In his testimony Petitioner Ahluwalia explained his statement "at least I did this one" was referring to his leaving Seattle.[60]

On April 27, 2000 Petitioner petitioned for review by this court.[61] The petition was granted on October 31, 2000.[62]

## DISCUSSION

Petitioner maintains the federal and state prohibitions against double jeopardy and RCW 10.43.050 barred his retrial on the second degree murder charge.[63] Respondent contends RCW 10.43.050 and the constitutional double jeopardy provisions did not prohibit retrial after a mistrial was declared when the jury was unable to reach a verdict on second degree murder in the first trial.[64]

On April 3, 2000, the Court of Appeals, the Honorable Marlin J. Appelwick writing, affirmed the trial court's decision and concluded the double jeopardy provisions did not bar retrial on the second degree murder charge.

### DOUBLE JEOPARDY

The United States and Washington State constitutions

---

[58] *Id.* (Jan. 7, 1998) at 79.

[59] *Id.* at 143.

[60] *Id.* at 87.

[61] Pet. for Review.

[62] Order, Supreme Court of Washington (Oct. 31, 2000).

[63] Pet. for Review at 6-7.

[64] Suppl. Br. of Resp't at 5-6.

protect against double jeopardy.[65] The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[66] The Washington Constitution provides that "[n]o person shall . . . in any criminal case . . . be twice put in jeopardy for the same offense."[67]

RCW 10.43.050 provides:

**Acquittal, when a bar.** No order of dismissal or directed verdict of not guilty on the ground of a variance between the indictment or information and the proof, or on the ground of any defect in such indictment or information, shall bar another prosecution for the same offense. Whenever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof.

Petitioner Ahluwalia argues RCW 10.43.050 limits successive prosecutions of counts of different degrees when there is an acquittal on one count and one count is left unresolved.[68] Petitioner maintains his argument is consistent with this court's decision in *State v. Rhinehart*, which he believes concludes that retrial on a lesser degree after acquittal on a greater degree violates double jeopardy protections.[69] Respondent cites *State v. Russell* and argues RCW 10.43.050 codifies constitutional double jeopardy principles and does not prevent the State from retrying a defendant on one degree of a charge after a jury is unable to reach a verdict.[70] The Court of Appeals cited *Russell* and concluded RCW 10.43.050 codifies the constitutional double

---

[65] *State v. Carson*, 128 Wn.2d 805, 821, 912 P.2d 1016 (1996) (citing U.S. Const. amend. V; Wash. Const. art. I, § 9).

[66] U.S. Const. amend. V.

[67] Const. art. I, § 9.

[68] Pet. for Review at 7.

[69] *Id.*; 92 Wn.2d 923, 602 P.2d 1188 (1979).

[70] Suppl. Br. of Resp't at 6; 33 Wn. App. 579, 657 P.2d 338 (1983), *aff'd in part, rev'd in part*, 101 Wn.2d 349, 678 P.2d 332 (1984).

jeopardy provisions which do not bar retrial following a mistrial granted after a deadlocked jury.[71]

Petitioner Ahluwalia misplaces reliance on *Rhinehart*. In that case this court concluded the failure to give an instruction is not error where there was no request for the instruction and there was sufficient evidence to establish possession of stolen property.[72] The court did not conclude retrial on a lesser degree of an offense on which a jury could not reach a verdict after acquittal of a greater degree constituted a violation of double jeopardy.

This court in reviewing the Court of Appeals decision in *State v. Russell* concluded retrial of a defendant on a previously instructed lesser included offense of intentional second degree murder was not barred by the double jeopardy clauses, but that adding an "alternative method" upon retrial was not proper.[73] Although the court did not specifically mention RCW 10.43.050, it nevertheless approved the reasoning of the Court of Appeals in the case, concluding that

> The Court of Appeals correctly decided that retrial on the first degree rape and the attempted first degree murder charges did not violate the double jeopardy clauses .... [W]e also agree that the retrial of petitioner on the previously instructed lesser included offense of intentional second degree murder was not barred by the double jeopardy clauses. *State v. Anderson*, 96 Wn.2d 739, 638 P.2d 1205 (1982).[74]

The Court of Appeals in *Russell* concluded RCW 10.43.050 and RCW 10.43.020 restate the constitutional double jeopardy provisions and the two statutes contemplate a final adjudication as to each offense charged.[75] The court reasoned that if the jury does not reach a verdict as to each offense charged, the defendant has not been acquitted

---

[71] *Ahluwalia*, slip op. at 10.

[72] *Rhinehart*, 92 Wn.2d at 927.

[73] *Russell*, 101 Wn.2d at 351-52.

[74] *Russell*, 101 Wn.2d at 351-52.

[75] *Russell*, 33 Wn. App. 579.

or convicted upon the indictment or information and that RCW 10.43.050 and RCW 10.43.020 do not preclude amendment of the information.[76]

██ ██ The constitutional double jeopardy provisions do not bar retrial following a mistrial granted because a jury was unable to reach a verdict.[77] The double jeopardy provisions require a final adjudication to bar retrial of a charge.[78] The Court of Appeals was not in error in concluding that *Russell*, as approved by this court, correctly states the law. Petitioner Ahluwalia was properly retried for second degree murder without violating RCW 10.43.050 because he was neither convicted nor acquitted of the charge of murder in the second degree in the first trial.

Petitioner asserts the Court of Appeals should not have relied on *Russell* because in that case the court incorrectly interpreted RCW 10.43.050 inasmuch as the language of the statute does not contemplate a final adjudication on each offense charged and that conclusion renders RCW 10.43.050 meaningless and superfluous.[79] Petitioner cites no authority to support this contention.

Petitioner Ahluwalia contends the decisions of the Court of Appeals in this case and in *State v. Russell* conflict with the Division Three Court of Appeals decision in *State v. Padilla*.[80] He asserts *Padilla* properly interprets RCW 10.43.050 as barring further proceedings on a count after a person has been convicted or acquitted of a count of a

---

[76] *Id.*

[77] *See Arizona v. Washington*, 434 U.S. 497, 505, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978) ("retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."); *Carson*, 128 Wn.2d at 821 ("when a jury is discharged because it is unable to reach a verdict on a criminal charge, . . . that event does not bar retrial on the charge under double jeopardy clauses"); *Russell*, 101 Wn.2d at 351-52.

[78] *See Arizona*, 434 U.S. at 505; *Carson*, 128 Wn.2d at 821; *Russell*, 101 Wn.2d at 351-52.

[79] Pet. for Review at 9-10.

[80] Pet. for Review at 5-6; *State v. Padilla*, 84 Wn. App. 523, 928 P.2d 1141, *review denied*, 132 Wn.2d 1002 (1997).

different degree.[81] Petitioner misreads *Padilla* which observed that RCW 10.43.050 "bars successive prosecutions for different degrees of the same crime but does not apply to lesser included offenses" and that "RCW 10.43.050 bars trial only following a conviction or acquittal."[82]

This court in *Russell* adopted the Court of Appeals decision in the case and concluded RCW 10.43.050 restates the double jeopardy provisions and does not bar retrial following a mistrial because the jury was unable to reach a verdict.[83] The conclusion of the Court of Appeals in *Padilla* is not inconsistent.[84]

Petitioner claims first degree murder and second degree murder are the "same offense" and double jeopardy bars retrial when there has been an acquittal of the "same offense" in violation of the "same evidence rule," citing *Blockburger v. United States.*[85]

*Blockburger* does not support Petitioner's argument. The appropriate rule, as stated in this court's decision in *State v. Calle*, is that under the same evidence rule, a defendant's double jeopardy rights are violated if the defendant is convicted of offenses that are identical in fact and law.[86] If each offense as charged "includes elements not included in the other, the offenses are different and multiple convictions can stand."[87] The same evidence rule does not apply in this case because there were no prior convictions before Petitioner was brought to trial, after a mistrial was granted in an earlier trial, on the charge of murder in the second degree. This trial resulted in his first conviction.

The Court of Appeals was correct in concluding that the

---

[81] *Id.*

[82] *Padilla*, 84 Wn. App. at 526.

[83] *Russell*, 33 Wn. App. at 584; *Russell*, 101 Wn.2d at 351-52.

[84] *Padilla*, 84 Wn. App. at 526.

[85] Suppl. Br. of Pet'r at 14; 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[86] 125 Wn.2d 769, 777, 888 P.2d 155 (1995).

[87] *Calle*, 125 Wn.2d at 777.

double jeopardy provisions of the United States and Washington constitutions were not violated when Petitioner was retried for second degree murder following a mistrial in the first trial after the jury acquitted him of murder in the first degree and was unable to reach a verdict on the lesser charge of murder in the second degree.

## PROCEDURES FOR TRIAL UNDER CRIMINAL RULES FOR SUPERIOR COURT

Although neither party raises a question concerning it, it is not clear from the record whether Petitioner was actually charged with murder in the second degree after the amended information charging him with murder in the first degree. Following the mistrial which was granted after the jury was unable to reach a verdict on the then uncharged lesser degree of murder in the second degree (which was included in the court's instructions to the jury), Petitioner was brought to trial before a jury on the charge of murder in the second degree. The original information charging murder in the second degree was superseded by the amended information charging murder in the first degree. Trial on that amended information resulted in the action of the jury which was the basis for the mistrial.

Following the mistrial, the Prosecuting Attorney elected to proceed against Petitioner on the charge of murder in the second degree. Counsel for the State in oral argument advised the court the State proceeded to the second trial, as a continuation of the first trial, without another information and without arraignment.

The trial would normally not have proceeded to a jury trial in the second case without some reference to an information and without arraignment. There is nothing in the record concerning this. However, the court did instruct the jury on murder in the second degree and gave a proper "to convict" instruction.

This court considered a case almost identical to this one

in *State v. Russell*[88] in which the jury acquitted the defendant of premeditated first degree murder and was unable to reach a verdict on the lesser included offense of intentional second degree murder. The trial court declared a mistrial and the case proceeded to a second trial on second degree murder. In concluding that the second trial on second degree murder did not constitute double jeopardy, the court observed:

> Prior to the second trial, the State *amended the information to eliminate the premeditated first degree murder charge and substitute intentional second degree murder based on the lesser included offense instructed in the first trial.* RCW 9A.32-.050(1)(a).[89]

There are some significant questions relating to procedures required under the Criminal Rules for Superior Court which apparently were not followed in this case. Because the parties have not raised them and because the case before this court is limited to the issue of double jeopardy, we make no comment on those questions.

### SUMMARY AND CONCLUSIONS

█ RCW 10.43.050 codifies the double jeopardy provisions of the United States Constitution (Amendment V) and the Washington Constitution (Article I, Section 9). The double jeopardy provisions do not bar retrial after a jury is unable to reach a verdict on a charge because there has been no final adjudication on the charge. Petitioner was properly retried for second degree murder without violating RCW 10.43.050 or the United States or Washington constitutions because he was neither acquitted nor convicted of the lesser charge of murder in the second degree in his first trial.

We affirm the decision of the Court of Appeals, Division

---

[88] 101 Wn.2d 349. While approving the conviction for second degree murder, this court nevertheless reversed because the information was amended a second time to add felony murder as an "alternative" means of committing second degree murder.

[89] *Id.* at 350 (emphasis added).

One, which affirmed the judgment of the King County Superior Court holding that the double jeopardy provisions of the United States and Washington constitutions were not violated when Petitioner Jatinder Singh Ahluwalia was retried for murder in the second degree following a mistrial after the jury acquitted him of first degree murder and was unable to reach a verdict on the lesser charge of murder in the second degree.

JOHNSON, MADSEN, IRELAND, BRIDGE, and OWENS, JJ., concur.

CHAMBERS, J. (dissenting) — I disagree with my learned colleagues. When the Legislature said "[w]henever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof," RCW 10.43.050, it meant what it said.

Jatinder Singh Ahluwalia was acquitted of first degree murder on October 10, 1997, but the jury was unable to agree upon a verdict of second degree murder. Seventy days later the State commenced a new trial against Ahluwalia for second degree murder. This violates the plain language of both RCW 10.43.020 and RCW 10.43.050.

RCW 10.43.020[90] and RCW 10.43.050[91] must be read together. Each section provides its own protection against

---

[90] "10.43.020 Offense embraces lower degree and included offenses. When the defendant has been convicted or acquitted upon an indictment or information of an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment or information for the offense charged in the former, or for any lower degree of that offense, or for an offense necessarily included therein."

[91] "10.43.050 Acquittal, when a bar. No order of dismissal or directed verdict of not guilty on the ground of a variance between the indictment or information and the proof, or on the ground of any defect in such indictment or information, shall bar another prosecution for the same offense. Whenever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof."

double jeopardy. Each section prohibits the State from proceeding against a defendant convicted or acquitted of a crime in another proceeding alleging a lower or different degree of the same crime. The difference between first degree murder and second degree murder is the element of premeditation. First degree murder requires a killing intentionally and with premeditation. Second degree murder requires a killing intentionally, but not necessarily with premeditation. First degree and second degree murder are the same offense, but in different degrees. A conviction or acquittal on first degree murder bars retrial on a theory of second degree murder by the plain language of RCW 10.43.020 and RCW 10.43.050.

RCW 10.43.020 prohibits the State from filing a new indictment or information for a lower degree of the same offense. The first sentence of RCW 10.43.050 provides that a dismissal or directed verdict based upon the grounds of a defective indictment or information shall not be a bar against another prosecution for the same offense. The second sentence of RCW 10.43.050 provides that when a defendant has been either acquitted or convicted upon an indictment or information, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime or any degree thereof. Thus, RCW 10.43.050 addresses three separate circumstances: whether or not a new indictment or information may be filed, whether or not a dismissal based upon a defective indictment or information is a bar, and whether or not a defendant can be proceeded against or tried for the same crime in another degree.

We are bound by the plain language of RCW 10.43.050. When a statute is unambiguous and not susceptible of more than one interpretation, courts cannot construe the statute in such a way as to contravene its plain meaning. *Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 784-85, 871 P.2d 590 (1994). A statute that is clear on its face is not subject to judicial interpretation. *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993). The plain lan-

guage of RCW 10.43.050 should have prevented the State from retrying Ahluwalia for second degree murder after his acquittal for first degree murder.

The fact that the double jeopardy clause is not offended by retrying Ahluwalia on second degree murder charges is not the issue here. The Legislature may provide greater protections to its citizens than the minimum protections afforded by the state and federal constitutions. *State v. Clark*, 139 Wn.2d 152, 157, 985 P.2d 377 (1999). As such, the fact that a constitutional double jeopardy analysis alone would not have operated to bar the State from retrying Ahluwalia for second degree murder does not mean that RCW 10.43.050 cannot. The Legislature is, of course, free to revise these statutes if it intends a different result.

This conclusion is supported by *State v. Padilla*, 84 Wn. App. 523, 928 P.2d 1141 (1997). In *Padilla*, the defendant was charged with assault in the first degree and alternatively with assault in the second degree with a deadly weapon enhancement. *Padilla*, 84 Wn. App. at 525. Over the State's objection, the trial court allowed Padilla to plead guilty to the second degree assault charge. He then moved to dismiss the first degree assault charge, claiming it was barred by RCW 10.43.050. The State opposed dismissal on the grounds the weapons enhancement somehow transformed the assault charge into something different. The trial court dismissed the State's argument, noted that a plea of guilty was the equivalent of a conviction, and granted the motion. The Court of Appeals affirmed.

The majority concludes that RCW 10.43.050 did not bar Ahluwalia's retrial for second degree murder because he was neither convicted nor acquitted of the charge of murder in the second degree in the first trial. However, the bar against retrial was not raised because of the hung jury on the second degree murder charge, but instead by the *acquittal* on the first degree murder charge—the same crime in another degree as second degree murder.

The majority advances three arguments to support its conclusion that there is no bar to retry a defendant on one

degree of an offense after a jury has been unable to reach a verdict on that offense even though the jury has acquitted the defendant on another degree of the same offense. None of the three arguments withstands scrutiny.

First, the majority argues the constitutional protection against double jeopardy is not violated when a defendant is retried subsequent to a hung jury for second degree murder, after being acquitted on first degree murder. This argument ignores the well-established fact that the Legislature may provide greater protection to its citizens than the federal or state constitutions.

Second, the majority, relying upon RCW 10.43.020, argues that once an information is filed against a defendant, the State is entitled to a final adjudication on the information. That provision of the act prohibits the filing of a new indictment or information after the defendant has been convicted or acquitted. If the Legislature intended that the State could retry a defendant as often as necessary to reach a final adjudication without filing a new indictment or information, then the second sentence of RCW 10.43.050 is unnecessary, meaningless and superfluous. Statutes must be interpreted in such a way as to render no part meaningless or superfluous. *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988); *Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

Third, the majority relies upon misplaced dicta in a single case. The majority relies upon *State v. Russell*, 33 Wn. App. 579, 657 P.2d 338 (1983), *aff'd in part, rev'd in part*, 101 Wn.2d 349, 678 P.2d 332 (1984), to support its conclusion that retrial of a defendant for second degree murder is not barred. *Russell* does not support the majority's conclusion. While factually similar, the only argument addressed by the Supreme Court in *Russell* was whether or not the defendant was put at jeopardy by the hung jury on the second degree murder charge and whether or not the hung jury prevented retrial of the same offense. The Supreme Court in *Russell* neither discussed RCW 10.43.050 nor discussed the issue of whether the defendant's acquittal of first degree

murder would act as a bar to a subsequent trial of second degree murder. The majority's reliance on the dicta in *Russell* is further undermined because Russell relied so heavily upon *State v. Barton*, 5 Wn.2d 234, 105 P.2d 63 (1940). *Barton* simply held that where a person was acquitted of first degree murder, that acquittal was not a bar to a subsequent filing of an information against the defendant for the offense of robbery arising out of the same circumstances. Thus *Barton* did not involve the same crime in different degree. I believe that the plain language of the statute requires dismissal, and therefore I respectfully dissent.[92]

ALEXANDER, C.J., and SANDERS, J., concur with CHAMBERS, J.

Reconsideration denied July 13, 2001.

[No. 69283-1.  En Banc.]
Argued November 16, 2000.     Decided May 17, 2001.

---

[92] The majority opinion also overlooks the rule of lenity, which obligates courts to read statutory ambiguities, absent legislative intent to the contrary, in favor of a criminal defendant. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 249-50, 955 P.2d 798 (1998). Read as the majority reads them, the two statutes at issue are ambiguous; the statutes either mean an acquittal bars retrial or they do not. Insofar as doubt exists, doubt must be resolved in favor of the lenity. *Whalen v. United States*, 445 U.S. 684, 694, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).