IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47183-3-II |
| Respondent, | |
| v. | |
| LEO LAVERN RUBEDEW, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Leo Rubedew guilty of first degree assault against

Charlaine Bramlett. Rubedew appeals his conviction and sentence, asserting that (1) his

conviction violated the constitutional prohibition against double jeopardy, (2) his conviction was

barred by principles of collateral estoppel, and (3) the trial court erred by imposing legal

financial obligations (LFOs) without first assessing his ability to pay them. In his statement of

additional grounds for review (SAG), Rubedew raises several issues of prosecutorial misconduct

and ineffective assistance of counsel. We affirm his conviction, but remand to the trial court to

consider Rubedew's ability to pay the LFOs.

FACTS

Bramlett and Rubedew were divorced in 2009. After Rubedew was hospitalized

following a suicide attempt, Bramlett allowed him to live in her home.

On May 7, 2013, Rubedew came home drunk. Bramlett and Rubedew began arguing,

and Bramlett told Rubedew that he needed to move out of her house. Rubedew became very

angry. After approximately 15 minutes of arguing, Rubedew asked Bramlett to go outside with

him, but Bramlett refused. Bramlett saw that Rubedew had one arm behind his back while he kept insisting that she exit the house with him. Rubedew was carrying a gun behind his back and Bramlett called 911, believing that Rubedew would again attempt to commit suicide.

While Bramlett was speaking with the 911 operator, Rubedew walked out to the side yard, and Bramlett followed him. Bramlett saw Rubedew sitting on a patio chair "monkeying" with a gun. Report of Proceedings (RP) (Dec. 8, 2014) at 174. Then, according to Bramlett:

> I was on the phone, and I was just talking to the [911 operator]. And [Rubedew] picked the gun up and pointed it at me and said, ["]Get off the damn phone or I'm going to shoot you.["] And then I heard a click.

RP (Dec. 8, 2014) at 174.

The gun did not fire. Rubedew then stuck the gun's barrel in his own mouth.

Police officers arrived a short time later, found Rubedew laying on his back in the front yard with his hands off to the side, and then handcuffed him without incident. The gun recovered from the scene was loaded, but the bullet in the chamber was facing backwards, and the bullets in the gun's magazine were also facing backwards.

The State charged Rubedew by amended information with attempted first degree murder and first degree assault with firearm and domestic violence sentencing enhancements. Rubedew's case proceeded to trial three times. Rubedew's first trial ended in a mistrial due to his health issues. At Rubedew's second trial, the jury returned a verdict finding him not guilty of attempted first degree murder, but it could not reach a verdict on the first degree assault charge.

Before the start of Rubedew's third trial, Rubedew moved to dismiss the first degree assault charge, raising double jeopardy and collateral estoppel issues. The trial court denied the motion. The jury in Rubedew's third trial found him guilty of first degree assault. The jury

2

further found that Rubedew was armed with a firearm during his commission of the offense and that Rubedew and Bramlett were members of the same family or household.

At sentencing, defense counsel asked the trial court not to impose any discretionary LFOs, stating that "Rubedew will probably never be able to pay his fines." RP (Jan. 23, 2015) at 403. The trial court declined defense counsel's request and imposed discretionary LFOs, stating, "I'm fully aware that the odds of [Rubedew being able to pay his fines] is not strong, but the point to raise that issue is when someone tries to collect it as I read the law." RP (Jan. 23, 2015) at 409. Rubedew appeals his conviction and sentence.

ANALYSIS

I. DOUBLE JEOPARDY

Rubedew first contends that the constitutional prohibition against double jeopardy prohibited the State from retrying him for first degree assault after the jury in his previous trial acquitted him of attempted first degree murder but could not reach a verdict on his first degree assault charge. We disagree.

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Article I, section 9 of our State Constitution similarly provides that no person shall "be twice put in jeopardy for the same offense." We interpret article I, section 9's protections against double jeopardy coextensively with the protections afforded under the Fifth Amendment. *State v. Gocken*, 127 Wn.2d 95, 102-103, 896 P.2d 1267 (1995).

Among other things, the Fifth Amendment's prohibition against double jeopardy protects against a second prosecution for the same offense after acquittal. *Gocken*, 127 Wn.2d at 100.

The double jeopardy clause prohibits a retrial only if all of the three following elements have been met: (1) jeopardy previously attached, (2) jeopardy previously terminated, and (3) the defendant is again placed in jeopardy for the same offense. *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996). But the prohibition against double jeopardy generally does "not bar retrial after a jury is unable to reach a verdict on a charge because there has been no final adjudication on the charge." *State v. Ahluwalia*, 143 Wn.2d 527, 541, 22 P.3d 1254 (2001).

Here, the jury in Rubedew's second trial was unable to reach a verdict on his first degree assault charge and, thus, double jeopardy principles generally would not prevent the State from retrying him on that charge. *Ahluwalia*, 143 Wn.2d at 541. Rubedew argues that the jury's verdict acquitting him of attempted first degree murder prevented the State from retrying him for first degree assault because the two crimes were the same offense. But Our Supreme Court rejected a nearly identical argument in *Ahluwalia*.

In *Ahluwalia*, the defendant was charged with and tried for one count of first degree murder for shooting and killing a taxicab driver. 143 Wn.2d at 529, 532. The jury at Ahluwalia's first trial was instructed on second degree murder as a lesser included offense to the first degree murder charge. 143 Wn.2d at 529. The jury acquitted Ahluwalia of first degree murder but could not reach a verdict on the lesser included offense of second degree murder. 143 Wn.2d at 529. Ahluwalia was then convicted of second degree murder at a second trial. 143 Wn.2d at 528. On appeal, Ahluwalia argued that double jeopardy principles prohibited the State from retrying him for second degree murder based on his acquittal of first degree murder because the crimes were "the 'same offense' and double jeopardy bars retrial when there has been an acquittal of the 'same offense' in violation of the 'same evidence rule.'" 143 Wn.2d at 539.

Our Supreme Court rejected this argument, holding that the same evidence rule did not apply "because there were no prior convictions before Petitioner was brought to trial, after a mistrial was granted in an earlier trial, on the charge of murder in the second degree." 143 Wn.2d at 539. And our Supreme Court recently reiterated this holding in *State v. Fuller*, 185 Wn.2d 30, 37-38, 367 P.3d 1057 (2016), stating:

> For double jeopardy purposes, a lesser included offense is the "same offense" as the greater offense. *See Brown v. Ohio*, 432 U.S. 161, 168-69, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). Where an individual is acquitted of the greater offense but the jury is declared hung on the lesser included offense, retrial of that lesser included offense is permitted and does not violate double jeopardy.

Rubedew argues that the rule articulated in *Ahluwalia* does not apply here because first degree assault is not a lesser included offense of attempted murder, and he was acquitted "on the same offense." Br. of Appellant at 14. This argument overlooks that double jeopardy jurisprudence does not bar retrial for a lesser included offense that is considered the "'same offense'" as the greater offense for which a defendant was acquitted. *Fuller*, 185 Wn.2d at 38 (quoting *Brown*, 432 U.S. at 168-69).

That Rubedew's first degree assault charge was not a lesser included offense to attempted first degree murder is a distinction without a difference. If double jeopardy is not offended by retrial of a defendant for a lesser included offense that is the "same offense" as the greater crime for which the defendant has been acquitted, it follows that double jeopardy is not offended by retrial of a defendant for a non-lesser included offense arising from the same alleged criminal conduct as an offense for which the defendant has been acquitted. Because jeopardy did not terminate on Rubedew's first degree assault charge in light of the jury's inability to reach a

verdict on that charge, we hold that the State was permitted to retry him on that charge without offending double jeopardy principles.

## II. COLLATERAL ESTOPPEL

Next, Rubedew contends that the State was collaterally estopped from retrying him for first degree assault based on his acquittal of attempted first degree murder. Again, we disagree.

"Under the collateral estoppel doctrine, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *In re Pers. Restraint of Moi*, 184 Wn.2d 575, 579, 360 P.3d 811 (2015) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). The doctrine of collateral estoppel is incorporated within the double jeopardy clause of the Fifth Amendment to the United States Constitution. *In re Moi*, 184 Wn.2d at 579 (quoting *Dowling v. United States*, 493 U.S. 342, 347, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)). As the party asserting collateral estoppel, Rubedew bears the burden of proof. *In re Moi*, 184 Wn.2d at 579. For collateral estoppel to apply, Rubedew must establish, among other things, that the issue decided in the prior adjudication is identical with the one presented in the second. *State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997).

Where, as here, "a previous judgment of acquittal was based on a general verdict, courts must 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.'" *Dowling*, 493 U.S. at 350 (alteration in original) (citations omitted in original) (quoting *Ashe*, 397 U.S. at 444).

To convict Rubedew of attempted first degree murder, the jury was required to find that the State proved beyond a reasonable doubt that he (1) took a substantial step toward (2) causing the death of another person, (3) with premeditated intent. RCW 9A.32.030(1)(a)(b); RCW 9A.28.020(1). In contrast, to convict Rubedew of first degree assault, the jury was required to find that the State proved beyond a reasonable doubt that (1) with intent to inflict great bodily harm, he (2) assaulted another with a firearm. RCW 9A.36.011(1)(a). Upon review of Rubedew's second trial, we conclude that a rational jury could have acquitted Rubedew of attempted first degree murder based on issues that would not have foreclosed a subsequent jury from finding him guilty of first degree assault.

The jury at Rubedew's second trial could have acquitted him of attempted first degree murder based on its determination that the State failed to prove beyond a reasonable doubt that Rubedew had *premeditated* intent to kill Bramlett. "Premeditation is 'the deliberate formation of and reflection upon the intent to take a human life' and involves 'thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.'" *State v. Allen*, 159 Wn.2d 1, 7-8, 147 P.3d 581 (2006) (internal quotation marks omitted) (quoting *State v. Finch*, 137 Wn.2d 792, 831, 975 P.2d 967 (1999)).

The State presented evidence at Rubedew's second trial that he was intoxicated during his encounter with Bramlett. And Bramlett testified at the second trial that after Rubedew heard her talking on the phone, he pointed the gun at her, and then she heard a click. Based on this evidence the jury could have found that, due to Bramlett's intoxicated state and the quick succession in which he pointed the gun at Bramlett and attempted to fire it, he lacked the deliberation and reflection required to form a premeditated intent to kill. Such a finding would

7

not foreclose a subsequent jury from finding that Rubedew formed an intent to inflict bodily harm, as required to convict him of first degree assault. *See* RCW 9A.08.010(1)(a) ("A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime."). Because the jury at Rubedew's second trial could have grounded its verdict of acquittal on the State's failure to prove premeditated intent, Rubedew cannot meet his burden to show that collateral estoppel barred a subsequent jury from finding him guilty of first degree assault. Accordingly, his collateral estoppel claim fails.

### III. LEGAL FINANCIAL OBLIGATIONS

Next, Rubedew contends that the trial court erred by imposing discretionary LFOs without first considering whether he had the present or likely future ability to pay those LFOs. We agree.

In *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015), our Supreme Court held that "RCW 10.01.160(3) requires the record to reflect that the sentencing judge made an individualized inquiry into the defendant's current and future ability to pay before the court imposes LFOs." The State asserts that the sentencing court judge made this individualized inquiry. The record belies the State's assertion.

Here, Rubedew's counsel objected to the imposition of discretionary LFOs. The sentencing court acknowledged that the odds of Rubedew being able to pay his fines were not strong but declined to make any finding with regard to his ability to pay, stating that Rubedew must raise the issue when the State seeks to collect the LFOs. Under *Blazina*, this was error, and we remand for consideration of Rubedew's ability to pay LFOs.

IV. SAG

In his SAG, Rubedew raises several issues of prosecutorial misconduct and ineffective assistance of counsel, all of which either lack merit or require examination of matters outside the appellate record.

A.       *Prosecutorial Misconduct*

To prevail on a claim of prosecutorial misconduct, a defendant must show that a prosecutor's conduct was both improper and prejudicial in the context of the entire record. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the jury's verdict. *Thorgerson*, 172 Wn.2d at 442-43. If a defendant fails to object at trial to the alleged misconduct, the defendant waives the issue on appeal unless he or she can demonstrate that the misconduct was so flagrant and ill-intentioned that the resulting prejudice was incurable by a jury instruction. *Thorgerson*, 172 Wn.2d at 443.

Rubedew first contends that the prosecutor engaged in vindictive prosecution by amending his charges to allege attempted first degree murder and first degree assault based on Rubedew's rejection of an offer to plead guilty to second degree assault and felony harassment. This contention is not properly before us in this direct appeal because the record does not contain any information regarding the State's plea offer. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). This issue would be more appropriately raised in a personal restraint petition. We do not further address it.

Next, Rubedew contends that the prosecutor committed misconduct by failing to call a witness at his third trial that the State called in his first two trials. This contention is meritless as

prosecutors have the right to "manage the course and direction of litigation," including the "right to determine the witnesses to be called and utilized by the prosecution." *State v. Hull*, 78 Wn.2d 984, 988-89, 481 P.2d 902 (1971).

Finally, Rubedew contends that the prosecutor committed misconduct during closing argument by misrepresenting the evidence presented at trial. Specifically, Rubedew asserts that the prosecutor lacked any evidentiary basis for stating that Bramlett's 911 call lasted "about 8 minutes and 15 seconds" or that she exited her house about "three minutes and 45 seconds" after placing the 911 call. RP (Dec. 10, 2014) at 361-62. This assertion is meritless. A recording of the 911 call was played to the jury at trial. The recording is 8 minutes and 15 seconds long. Additionally, at 3 minutes and 43 seconds into the recording, Bramlett tells the 911 operator that she is exiting the house. Because the evidence at trial supported the prosecutor's closing argument, Rubedew fails to show that it was improper, and his prosecutorial misconduct claim fails.

B.      *Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim, the defendant must establish that defense counsel's performance was deficient and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We strongly presume that defense counsel's performance was reasonable, and "[t]o rebut this presumption, the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)), *cert. denied*, 135 S. Ct 153 (2014).

Rubedew first contends that his counsel was ineffective for failing to object to Bramlett's description of the sound she heard coming from Rubedew's gun as a "click," stating that the term was vague. SAG at 5. But Rubedew fails to argue any basis upon which his defense counsel could have objected to this testimony, and we cannot discern of any basis upon which the testimony was objectionable. Moreover, Bramlett testified at trial that the "click" sound that she heard resembled the sound she had heard when her first ex-husband, who was a police officer, dry fired his gun while cleaning it. Accordingly, Rubedew fails to demonstrate that his counsel was ineffective for failing to object to Bramlett's testimony.

Next, Rubedew contends that his counsel was ineffective before trial for failing to have Bramlett's hearing tested and for failing to have the gun tested for the presence of his saliva or other bodily fluids. Again, these contentions require examination of matters outside the appellate record, and are more appropriately raised in a personal restraint petition. We do not further address them. *McFarland*, 127 Wn.2d at 335.

Finally, Rubedew contends that his counsel was ineffective for failing to object to the prosecutor's leading question asking Bramlett, "Were you scared?" in response to Rubedew pointing a gun at her. RP (Dec. 9, 2014) at 233. But, even assuming that the prosecutor's question was objectionable, "[t]he decision of when or whether to object is a classic example of trial tactics" that cannot support an ineffective assistance of counsel claim. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Because Rubedew presents no argument as to how his counsel's decision not to object to the prosecutor's question lacked a legitimate tactical basis, he fails to meet his burden. Accordingly, Rubedew fails to demonstrate that his defense counsel was ineffective.

11

No. 47183-3-II

We affirm Rubedew's first degree assault conviction but remand for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.