**Kirk L. RISHOR, Petitioner,**

v.

**Bob FERGUSON, Respondent.**

**Case No. C11–1492 MJP.**

United States District Court, W.D. Washington, at Seattle.

Signed Dec. 3, 2014.

---

Kirk L. Rishor, Lompoc, CA, pro se.

Alex A. Kostin, Olympia, WA, for Respondent.

## ORDER ON MOTION FOR RECONSIDERATION

MARSHA J. PECHMAN, Chief Judge.

THIS MATTER comes before the Court on Petitioner Kirk Rishor's Motion for Reconsideration (Dkt. No. 43) of the Court's Order Denying Petition for Writ of Habeas Corpus and Dismissing Action (Dkt. No. 40). Having reviewed Petitioner's Motion, Respondent's Response (Dkt. No. 49), Petitioner's pro se Reply (Dkt. No. 50), Petitioner's Reply via appointed counsel (Dkt. No. 55), Respondent's Response to the Court's order for additional briefing (Dkt. No 54), Respondent's Surreply and Motion for Oral Argument (Dkt. No. 56), Petitioner's Motion to Strike (Dkt. No. 57), Respondent's Response to Motion to Strike (Dkt. No. 58), Respondent's Supplemental Brief prior to oral argument (Dkt. No. 60), Petitioner's Supplemental Submission (Dkt. No. 61), and Exhibit 1 to the parties' oral argument (*see* Dkt. No. 63), and having heard oral argument on October 22, 2014, the Court hereby VACATES the previous order and judgment, DECLINES to adopt the Report and Recommendation, and GRANTS the petition for habeas corpus on both waiver of counsel and double jeopardy grounds.

## Background

Mr. Rishor is an experienced pro se litigant who represented himself in his first trial on four charges—first degree assault, two counts of second degree assault, and first degree unlawful possession of a firearm—in Whatcom County in 2004. (*See* Dkt. No. 29, Ex. 23 at 6.) Prior to that trial, the trial court engaged in what the Washington appellate court described as an "extensive colloquy" with Petitioner about his wish to represent himself. (*See* Dkt. No. 29, Ex. 19 at 3–4; Ex. 22.) The jury acquitted Petitioner on the formal second degree assault charges but returned a guilty verdict on the unlawful possession charge and also on second degree assault (as a lesser included offense of the first degree assault charge). (*See* Dkt. No. 29, Ex. 23 at 6.) The jury was silent as to the first degree assault charge, but showed no signs of deadlock. (*See* Dkt. No. 49 at 13.) On appeal, the Washington Court of Appeals reversed the second degree assault conviction and remanded for a new trial on that charge. (Dkt. No. 29, Ex. 23 at 2.) The three claims Petitioner asks the Court to reconsider (validity of waiver of right to counsel, double jeopardy, and certificate of appealability (*see* Dkt. No. 43 at 1–3)) relate to the proceedings on these matters after remand.

## I. *Facts Related to Waiver of the Right to Counsel*

On remand, the trial court did not explicitly confirm Petitioner's previous waiver of counsel. While a trial judge stated during an early appearance that he "had [Rishor] here to reiterate his request to proceed in a pro se basis," he did not engage in a formal colloquy with Petitioner. (Dkt. No. 29, Ex. 24 at 5.) Petitioner responded to the question whether he wished to proceed on a pro se basis by asking for standby counsel rather than acknowledging the risks of representing himself. (*Id.*)

In a later appearance before a different judge, he was asked whether he had an attorney, and he responded, "No, I don't. I'm pro se, Your Honor." (Dkt. No. 29, Ex. 26 at 3.) He reiterated his need for standby counsel in order to have his motions noted: "I can't get stuff noted up for docket unless I have Mr. Fryer doing it because they won't do it from jail." (*Id.* at 7.) In a separate transcript dated the same day, Petitioner told the judge that his standby counsel did not need to be present for his arraignment. When the judge asked the prosecutor why Mr. Fryer was not present, Petitioner answered, "Because he had some other stuff to do and I could handle the arraignment by myself. I don't really need him here. That's why." (Dkt. No. 29, Ex. 16, Appx. G at 3.) The prosecutor stated, "I would think Mr. Fryer would or should have been here," and Petitioner responded, "Your Honor, that's the problem I'm having. I can show up for court and take care of most of the stuff. Mr. Fryer didn't need to be here this morning. I told him." (*Id.*) Petitioner was not in fact arraigned on that occasion because the judge could not find the information in his case. The judge guessed (incorrectly) that he was facing only a second-degree assault charge: "Now, the last thing in this file that I'm finding is a Judgment and Sentence where you were convicted of assault in the second degree and unlawful possession of a firearm in the first degree back in May of'04. I'm assuming that that remains the charge, that's what's been remanded. For some reason there doesn't appear to be a copy of the Information in this file [. . . .] Assuming that there hasn't been an amended charge filed, that's what you're looking at." (*Id.* at 5.)

On appeal, the Court of Appeals held that Petitioner's representations as contained in these transcripts constituted a valid waiver of the right to counsel in light of the court's formal colloquy with Petitioner two and a half years earlier. (*See* Dkt. No. 29, Ex. 19 at 3–4.) According to the Court of Appeals, "Rishor made no showing after remand that he no longer wished to represent himself. Rather, he requested only standby counsel and, [sic] further stated that he did not need standby counsel to be present at arraignment and that he was able to 'show up for court and take care of most of the stuff.'" (*Id.* at 4.) The Court of Appeals also held that under the standard of review used for personal restraint petitions in Washington, Petitioner could not show actual prejudice because his standby counsel was involved in plea negotiations. (*Id.*) The Washington Supreme Court then held in a ruling denying discretionary review that to the extent that this failure to secure a second waiver of counsel was constitutionally deficient, the deficiency was not prejudicial. (Dkt. No. 29, Ex. 21 at 2.)

## II. *Facts Related to Double Jeopardy*

On remand from the Court of Appeals, Petitioner was initially charged with first degree assault again—even though his first jury had impliedly rejected that charge in convicting him of the lesser included offense. (Dkt. No. 29, Ex. 5 at 83.) He was never formally arraigned on this charge, though his standby counsel purported to waive his arraignment. (Dkt. No. 29, Ex. 28.) As reflected in the transcripts, Petitioner was given varying information about the charge he was facing at different times during the pretrial and post-plea phases. (*See, e.g.* Dkt. No. 29, Ex. 16, Appx. G at 5 (during the pretrial phase a judge told Petitioner the judge assumed Petitioner was facing a second-degree charge); Dkt. No. 29, Ex. 24 at 10 (during the pretrial phase a prosecutor told the judge, "[T]echnically he is back here for a first appearance on the assault in the second degree"); Dkt. No. 29, Ex. 17, Appx. C at 5 (after Petitioner's plea a prosecutor told the sentencing judge, "Of course at this point in time the State could only proceed on assault in the second degree"); Dkt. No. 29, Ex. 30 at 3 (after Petitioner's plea Petitioner stated that he had been charged with first degree assault on remand).)

The record reflects that the Second Amended Information changing Petitioner's charge to second degree assault was filed on January 8, 2007, the same date Petitioner entered a plea of guilty to second degree assault. (Dkt. No. 61, Appx. A at 20; *id.,* Appx. D. at 2; Dkt. No. 63.) According to an affidavit by Petitioner's standby counsel, which was filed in the state court proceedings, he had advised Petitioner during the pretrial phase of the sentencing consequences of a conviction of assault in the first degree and that "While I cannot speak to the defendant's thought process as to accepting or rejecting the plaintiff's offer to plead guilty to assault in the second degree. [sic] Presumptively, the information I provided him as to the consequences of being convicted of convicted of assault in the first degree in contrast to the consequences of pleading guilty to assault in the second degree factored into his decision to plead guilty to the amended charge." (Dkt. No. 29, Ex. 16, Appx. K at 2.) The record thus suggests Petitioner was not informed that the first degree assault charge was improper and that he was offered an amended information in exchange for a plea of guilty to second degree assault.

## III. *Procedural History and Exhaustion*

The prior proceedings in the state courts are numerous, and the Report and

Recommendation summarizes most aspects of the history well. (Dkt. No. 35 at 2–7.) The Court notes the following correction: Petitioner's guilty plea was on January 8, 2007, not 2006. (*See* Dkt. No. 61, Appx. C at 2; Dkt. No. 35 at 2.)

Respondent has conceded that Petitioner exhausted his state remedies as least as to the three claims directly addressed by the Report and Recommendation, including waiver of the right to counsel. (Dkt. No. 27 at 10.) Counsel for Petitioner argues the double jeopardy claim was fairly presented to the state courts, while Respondent argues it was not exhausted. (Dkt. No. 49 at 12–14.) The procedural history relevant to exhaustion and second or successive petitions is described in the corresponding sections below.

### Discussion

I. *Standards of Review*

A. Motion for Reconsideration

Pursuant to Local Rule 7(h)(1), motions for reconsideration are disfavored, and will ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the attention of the court earlier, through reasonable diligence. The term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed.2009).

B. Second or Successive Bar

Respondent argues Petitioner's Motion for Reconsideration is subject to AEDPA's second or successive claims bar. (Dkt. No. 60 at 2.) That bar provides:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244.

C. AEDPA Standard

Finally, a federal court may not grant an application for habeas corpus

with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"[C]learly established federal law" for the purpose of § 2254(d) means "holdings of the Supreme Court at the time of the state court decision." *Stanley v. Cullen,*

633 F.3d 852, 859 (9th Cir.2011) (citation omitted). While it is improper to derive "clearly established federal law" by canvassing circuit court opinions in the absence of a Supreme Court opinion on point, this Court may look to 9th Circuit case law to ascertain whether the 9th Circuit has held that the particular point at issue is clearly established by Supreme Court precedent. *See Marshall v. Rodgers,* —— U.S. ——, 133 S.Ct. 1446, 1450–1451, 185 L.Ed.2d 540 (2013) (per curiam). In applying this standard of review, the Court "look[s] to the last reasoned decision in the state court system." *Collins v. Runnels,* 603 F.3d 1127, 1130 (9th Cir.2010) (quotation marks omitted). Once the "contrary to" prong is met for a particular point of law, the Court analyzes the constitutional question without the deference that AEDPA otherwise requires. *See Frantz v. Hazey,* 533 F.3d 724, 735 (9th Cir.2008) (*citing Panetti v. Quarterman,* 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)).

## II. *Postjudgment Motions and Second or Successive Bar*

Respondent argues Petitioner's Motion for Reconsideration is akin to a Federal Rule of Civil Procedure 60(b) motion for relief from a final judgment; according to Respondent, such a motion cannot evade the new claims litigation bar of AEDPA and is considered a second or successive habeas application under *Gonzalez v. Crosby,* 545 U.S. 524, 531, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) and *Calderon v. Thompson,* 523 U.S. 538, 553, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). (Dkt. No. 60 at 2.) However, neither case cited by Respondent concerns a motion for reconsideration that was timely filed in the district court. *See Gonzalez,* 545 U.S. at 527, 125 S.Ct. 2641 (Rule 60(b) motion filed nine months after a change in applicable law and more than a year since the last

order at the Court of Appeals); *Calderon,* 523 U.S. at 555, 118 S.Ct. 1489 (recall of mandate by Court of Appeals).

A motion for reconsideration filed within 28 days is considered a Rule 59(e) motion rather than a Rule 60(b) motion. *See Am. Ironworks & Erectors, Inc. v. North Am. Constr. Corp.,* 248 F.3d 892, 898–99 (9th Cir.2001). Rule 60(b)(6) is appropriate only "where 'extraordinary circumstances prevented [him] from taking *timely action* to prevent or *correct an erroneous judgment.*'" *Hamilton v. Newland,* 374 F.3d 822, 825 (9th Cir.2004), quoting *Greenawalt v. Stewart,* 105 F.3d 1268, 1273 (9th Cir.1997) (emphasis added). Here, in contrast, Petitioner took prompt action to correct the judgment: the motion was filed seventeen days after the Court's order and entry of judgment and is therefore a Rule 59(e) motion. (*See* Dkt. Nos. 43, 42, 41.)

There is a circuit split on the question whether the *Gonzalez* analysis applies to Rule 59(e) motions. The Fifth, Eighth, Tenth, and Fourth Circuits have held or implied that it does. *See Williams v. Thaler,* 602 F.3d 291, 303–04 (5th Cir. 2010); *Ward v. Norris,* 577 F.3d 925, 931–35 (8th Cir.2009) (although it appears from the panel's discussion of the facts that the purported Rule 59(e) motion was filed more than 28 days after the entry of judgment and after the denial of a Rule 60(b) motion); *United States v. Pedraza,* 466 F.3d 932, 933 (10th Cir.2006) (although there the Rule 59(e) motion was a motion for reconsideration of the district court's decision on a Rule 60(b) motion); *United States v. Martin,* 132 Fed.Appx. 450, 451 (4th Cir.2005) (pre-*Gonzalez* decision in which timeliness of Rule 59(e) motion is not discussed). The Sixth and Third Circuits have concluded that *Gonzalez* does not apply to timely filed Rule 59(e) motions. *See Howard v. United States,* 533 F.3d 472, 475 (6th Cir.2008); *Blystone v.*

*Horn*, 664 F.3d 397, 414–15 (3d Cir.2011). The Ninth Circuit has not yet decided the question.

■■■ Because a timely filed motion for reconsideration tolls the time for appeal, *see* Fed.R.App.P. 4(a)(4)(A), and thus effectively suspends the finality of the judgment for that period, the Court agrees with the Sixth and Third Circuits' conclusions that such a motion does not constitute a second or successive application for habeas corpus. *See Blystone*, 664 F.3d at 414 ( [A] timely filed Rule 59(e) motion *suspends* the finality of the judgment by tolling the time for appeal. Accordingly, we cannot logically subject a Rule 59(e) motion to the statutory limitations imposed upon second or successive collateral attacks on criminal judgments because, unlike a Rule 60(b) motion, it is neither a collateral attack on the initial habeas judgment, nor a new collateral attack on the underlying criminal judgment—rather it is part and parcel of the petitioner's 'one full opportunity to seek collateral review.' ") (emphasis in original) (citations omitted).

In addition, at least with respect to the double jeopardy claim, there can be no argument that Petitioner is bringing a "claim presented in a second or successive habeas corpus application" that was also "presented in a prior application." *See* 28 U.S.C. § 2244(b). Under *Gonzalez*, the double jeopardy claim neither raises a "new ground for relief" (because it was raised in his initial habeas petition, albeit inartfully) nor "attacks the federal court's previous resolution of a claim on the merits" (because the Court failed to recognize the claim and address its merits). *Cf. Gonzalez*, 545 U.S. at 532, 125 S.Ct. 2641 (distinguishing Rule 60(b) motions that "advance one or more 'claims' " from those that address "some defect in the integrity of the federal habeas proceedings"). (*See* Petition (form habeas petition), Dkt. No. 4

at 6 ("no notice of charges"), 8 ("failure to arraign"); Supplemental Brief (supplemental brief filed seven days after the habeas petition), Dkt. No. 5 (arguing under Grounds 1 and 2 that "The state had no legal authority to re-file first degree assault charges against the petitioner. *State v. Ahluwalia*, 143 Wash.2d 527, 540–41, 22 P.3d 1254 (2001) as demonstrated by the discussion in ahluwalia and .[sic] arraignment is required afther [sic] a reversal, especially where an amended information is filled [sic] and there is a basis to be confused about the charges."); Report and Recommendation, Dkt. No. 35 at 9 n. 3 (noting but not addressing the argument that "it was improper for the state to charge him with first degree assault on remand because he was found not guilty on that charge at his original trial").)

III. *Waiver of the Right to Counsel*

Petitioner first seeks reconsideration on waiver of the right to counsel, arguing the state courts applied the wrong standard of review to the trial court's failure, on remand, to secure a waiver of the right to counsel on the new charges he was facing in the wake of acquittals and an appeal. (Dkt. No. 43 at 1–2; Dkt. No. 55 at 5–6.) In this case, the "last reasoned opinion" in the state courts is the Washington Supreme Court's opinion denying discretionary review. *See Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir.2005) (holding that a seven-page order from the Washington Supreme Court denying review of a personal restraint petition and examining the substance of the claim at issue was the last reasoned decision). Petitioner is correct that the last reasoned opinion of the Washington courts clearly required Petitioner to demonstrate prejudice on this question. (Dkt. No. 29, Ex. 21 at 2.) The more detailed Court of Appeals opinion contained a similar analysis. (*See* Dkt.

No. 29, Ex. 19 at 4.) The Report and Recommendation previously adopted by this Court also relied on a prejudice finding: "In fact, the record suggests that petitioner desired to represent himself on remand and that he ably did so with the assistance of standby counsel." (Dkt. No. 35 at 13.) Furthermore, in adopting that Report and Recommendation, this Court's Order (Dkt. No. 40 at 2) overlooked Petitioner's citations to a relevant Supreme Court case on *per se* prejudice in his Objections (Dkt. No. 38 at 2).

The Court notes that the record suggests that Petitioner may well have been prejudiced by the supposed assistance of his standby counsel, who purported to waive arraignment even though Petitioner was not aware of the charges against him and informed Petitioner during plea negotiations that he was facing a higher sentence based on a first-degree assault when double jeopardy should have prevented that charge from being filed. (*See* Dkt. No. 29, Ex. 28; *id.*, Ex. 17, Appx. K.)

However, it would be imprecise to say that the Washington courts' failure to recognize this prejudice is contrary to federal law—because federal law does not require a showing of prejudice on Sixth Amendment claims in the first place. As Petitioner pointed out in his Motion for Reconsideration, the Ninth Circuit has stated unequivocally that the application of a harmless error standard to a trial court's failure to secure a *Faretta* waiver does not comport with the Sixth Amendment. *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir.2004) ("[T]he failure to meet the requirements for a valid *Faretta* waiver constitutes per se prejudicial error, and the harmless error standard is inapplicable."); *see also United States v. Mohawk*, 20 F.3d 1480, 1483 (9th Cir.1994). Thus, Petitioner's argument merited reconsideration by this Court on the grounds that the

Report and Recommendation and the Order adopting the Report and Recommendation included a "manifest error" or "mistake." LCR 7(h)(1); FRCP 60(b).

It is not clear, however, that the narrow legal principle of per se prejudice has been precisely enunciated by the United States Supreme Court—a prerequisite to relief under AEDPA. The Supreme Court has held that a denial of the right to self-representation under the Sixth Amendment is *per se* prejudicial error. *McKaskle v. Wiggins*, 465 U.S. 168, 177, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In a mirror-image case somewhat closer to the factual scenario presented here, the Supreme Court also held that the denial of the right to be assisted by the counsel of one's choice is *per se* prejudicial error. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) ("Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation."). Together, these cases imply that the Supreme Court would, if faced with this question, hold that the Washington courts were wrong to require Petitioner to demonstrate prejudice in the Sixth Amendment claim he makes here. However, according to the Supreme Court, a habeas claim does not merit relief under AEDPA where the state court has unreasonably failed to extend the legal principles in Supreme Court precedent. *White v. Woodall*, —— U.S. ——, 134 S.Ct. 1697, 1705–06, 188 L.Ed.2d 698 (2014). Because the precise conclusion that failure to secure a valid *Faretta* waiver is *per se* prejudicial appears in Ninth Circuit but not Supreme Court precedent, this Court cannot grant relief on that claim.

Petitioner is on more solid ground when he argues that Washington

courts unconstitutionally shifted the burden onto Petitioner to demonstrate a knowing and voluntary waiver of counsel. (Dkt. No. 55 at 5.) According to the Supreme Court, "It is the State's burden to show that a [Sixth Amendment] waiver is knowing and voluntary." *Michigan v. Harvey*, 494 U.S. 344, 354, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). Furthermore, "the right to counsel does not depend on a request from a defendant ... and courts indulge in every reasonable presumption against waiver. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (citations omitted). In this case, both the Court of Appeals opinion and the Supreme Court shifted the burden to Petitioner to demonstrate that he knowingly and voluntarily waived the right to counsel. (*See* Dkt. No. 29, Ex. 19 at 4 ("Rishor made no showing after remand that he no longer wished to represent himself."); Ex. 21 at 2 ("[T]he record indicates that Mr. Rishor was more than ready to proceed pro se with the active assistance of standby counsel.").) These conclusions were contrary to clearly established federal law as established by the Supreme Court because they put the burden on Petitioner to demonstrate lack of waiver and failed to apply a presumption against waiver.

Once the "contrary to" prong is met for a particular point of law, the Court analyzes the constitutional question without the deference that AEDPA otherwise requires. *See Frantz v. Hazey*, 533 F.3d at 735. If the state prosecutes Petitioner on the second degree assault charge, the Washington courts must ensure that Petitioner either is provided with counsel or "knowingly and intelligently" waives the right to counsel—a standard which requires the defendant to be "aware of the

nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation" on those charges. *See Mohawk*, 20 F.3d at 1484. The question whether Petitioner is skilled at self-representation is, under Ninth Circuit precedents, "irrelevant." *Id.*

## IV. *Double Jeopardy*

Petitioner also seeks the Court's reconsideration on double jeopardy: "that Petitioner was found NOT GUILTY OF FIRST DEGREE ASSAULT at Jury Trial with an implied acquittal/Washington States silent doctrine." (Dkt. No. 43 at 2.) Petitioner's double jeopardy claims merit reconsideration because the Report and Recommendation and the Order adopting it acknowledged the existence of a recognizable constitutional argument without addressing it or by addressing it erroneously. (*See* Dkt. No. 35 at 9 n. 3 ("Petitioner maintains that it was improper for the state to charge him with first-degree assault on remand because he was found not guilty of that charge at his original trial."); Dkt. No. 40 at 3 ("Although Petitioner was not originally convicted on first degree assault, Petitioner was initially charged with first degree assault; there is no indication there was any prosecutorial vindictiveness by bringing that same charge on remand.").) Contrary to Respondent's characterization of the Court's docket, Petitioner first raised double jeopardy arguments in the earliest stages of this case: the Supplemental Brief filed in conjunction with his Petition ("The state had no legal authority to re-file first degree assault charges against the petitioner." (Dkt. No. 5 at 3); "The acting chief judge dismissed petitioner's's [sic] claim that the court re-charged him with first degree assault knowing that second degree was all he could be charged with by stating he did not raise the argument in the mo-

tions transferred for consideration. Petitioner has supplied theses[sic] motions and his reply brief in appendix a of this motion [....] Craig chambers states second degree assault was all petitioner could be charged with after remand. Two years after he re-filed the first degree assault charges against petitioner." (Dkt. No. 5 at 4) (citations omitted)) and the Supplemental Brief filed after Petitioner's 60(b) motion following the denial of his petition on custody grounds ("Then the Prosecution Re–Filed FIRST DEGREE ASSAULT CHARGES against the Petitioner on November 6th 2006. Petitioner was found NOT GUILTY BY JURY on these charges at his original trial, the Petitioner was never given notice, or arraigned on this new filing either, and this is what they used to COERCE the guilty plea [....] [The Washington Supreme Court] LEAVE[S] OUT THE FACT that I was unconstitutionally recharged with First Degree Assault that I was previously found NOT GUILTY BY JURY." (Dkt. No. 23 at 4)).

As Respondent acknowledged in its Response to the Court's order requesting additional briefing, Petitioner was in fact charged with first-degree assault on remand even though he had been impliedly acquitted of that charge at his first trial. (See Dkt. No. 49 at 13.) Respondent's description of this problem in its Response ("subsequent prosecution on the charge the jury implicitly acquits is a double jeopardy violation," Dkt. No. 49 at 13) led the Court to characterize Respondent's position as an "admission that Petitioner was prosecuted in violation of the Double Jeopardy Clause." (Dkt. No. 53 at 1.) Respondent strenuously objected to this characterization in an unsolicited letter to the Court, noting that Respondent ultimately pled guilty to second degree assault, which in Respondent's view cures and insulates from review the initial charging problem.

(Dkt. No. 54 at 1.) The Court was never under any misapprehension about Respondent's position on this point; being charged and therefore "prosecuted" in violation of the Double Jeopardy Clause does not necessarily mean Petitioner is entitled to relief under AEDPA.

A. Exhaustion

The first hurdle Petitioner must contend with is exhaustion. Respondent argues Petitioner's double jeopardy claim is not exhausted and is procedurally defaulted. (Dkt. No. 13–14.) Petitioner identifies several places in the state court proceedings, including Petitioner's pro se Motion for Discretionary Review to the Washington State Supreme Court, where Petitioner brought claims that raised double jeopardy issues while omitting the "talismanic phrase 'double jeopardy.' " (Dkt. No. 55 at 18–19.)

The Court is mindful that the "exhaustion doctrine [...] is founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries." *Wood v. Milyard*, —— U.S. ——, 132 S.Ct. 1826, 1833, 182 L.Ed.2d 733 (2012) (citation omitted). In order to exhaust a claim, a petitioner must "fairly present" his "federal legal theories to the state courts, so that those courts are alerted to the fact that the prisoner[ ][is] asserting claims under the United States Constitution and thus given the opportunity to correct alleged violations of [the] prisoner['s] federal rights." *Arrendondo v. Neven*, 763 F.3d 1122, 1138 (9th Cir.2014) (citing *Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)) (internal quotation marks omitted). "To fairly present a federal claim, a state prisoner must present to the state courts both the operative facts

and the federal legal theories that animate the claim." *Id.* (citations omitted). However, "the complete exhaustion rule is not to trap the unwary pro se prisoner." *Slack v. McDaniel,* 529 U.S. 473, 487, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks omitted). "[C]itation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir.2005).

Here, Petitioner first presented the factual and legal basis for his double jeopardy claim in a pro se "statement of additional grounds" filed as a supplement to his counseled opening brief to the Court of Appeals in an appeal of his post-judgment Superior Court motion to withdraw his guilty plea and petition for habeas corpus. (Dkt. No. 29, Ex. 10.) In this submission, Petitioner briefed two assignments of error: "1) Did the state error [sic] when it refiled 1° assault charges?" and "2) Were the states [sic] actions governmental misconduct?" (*Id.* at 4.) He argued,

> Rishor's cases was reversed and remanded on August 14, 2006 on the lesser included charge of count 1, 2° assault. After Rishor returned to the superior court, the state filed 1° assault charges against Rishor based on the original information. This was an error. When the jury came back from deliberation they had been silent on the 1° assault charge. [sic] thus invoking the silent doctrine[.]

(*Id.*) He cited two Washington state cases, *State v. Schoel,* 54 Wash.2d 388, 341 P.2d 481 (1959), and *State v. Linton,* 156 Wash.2d 777, 132 P.3d 127 (2006), which were precisely on point: in both, the implied acquittal doctrine was at issue and the holding rested solely (in *Schoel* ) and equally (in *Linton* ) on the double jeopardy guarantee of the Fifth Amendment. He concluded, "The reversal and remand was

on 2° assault, and that is all Rishor could have been retried on." (Dkt. No. 29, Ex. 10 at 4.)

These supplemental arguments were not addressed by the lower courts, in part due to the procedure by which the underlying post-judgment motions were remanded to the Superior Court and then transferred to the Court of Appeals for consideration as a personal restraint petition. (*See* Dkt. No. 29, Exs. 13–14.) Respondent's brief in the Court of Appeals did not address Petitioner's double jeopardy arguments. (*See* Dkt. No. 29, Ex. 16.) Before the Court of Appeals ruled on the trial court post-judgment motions, Petitioner filed (apparently simultaneously on January 6th/8th, 2010) a Reply Brief (Dkt. No. 29, Ex. 17) and a submission styled as a "Motion on the Merits to Reverse" (*Id.,* Ex. 18 at 2). Both briefs again raised the double jeopardy argument. The Reply used the argument to attack the State's conclusion that the guilty plea waived any constitutional violation, and cited *Schoel* and *Linton.* (*Id.,* Ex. 17 at 5–6.) The Motion cited *Schoel* and argued, "The State had no Legal Authority to Re-charge Petitioner with First Degree Assault [ . . . . ]The State Held First Degree Assault charges over Petitioner's head to secure the plea bargain, when they knew Second Degree Assault was all he could be charged with." (*Id.,* Ex. 18 at 2.) It further requested that the case be remanded for a new trial on the second degree assault charge. (*Id.*)

The Court of Appeals stated that it would not consider any argument that the guilty plea was coerced because it was raised for the first time in a reply brief rather than in the immediate post-judgment motions that were converted into a personal restraint petition. (Dkt. No. 29, Ex. 19 at 4.) As Petitioner points out, the Court nonetheless concluded that the plea was not coerced and implicitly dismissed

the basis for this claim (the double jeopardy argument). (*Id.*)

Petitioner again raised double jeopardy arguments in his Motion for Discretionary Review to the Washington State Supreme Court. (Dkt. No. 29, Ex. 20.) In the course of an argument about arraignment, he argued, "The State had no legal authority to re-file fist [sic] degree assault charges against the petitioner" (citing *State v. Ahluwalia*, 143 Wash.2d 527, 22 P.3d 1254 (2001) (another Washington case dealing with double jeopardy under the Fifth Amendment)). A separate argument, inartfully titled "Can the Court dismiss the Petitioner's claims by stating he failed to raise the issue when in his original motion it was clearly raise [sic]?", directly addressed the double jeopardy argument, both separately and as the basis for an argument that the guilty plea was coerced. Petitioner wrote, "The acting Chief Judge dismissed Petitioner's claim that the Court re-charged him with first degree assault knowing that second degree was all he could be charged with by stating he did not raise this argument in the motions transferred for consideration." (Dkt. No. 29, Ex. 20 at 14.) He continued, "The State re-filed first degree assault charges with no legal authority, and secured a plea, negations [sic] of that higher charge. [ . . . ] The State had no legal power to negotiate with first degree assault. Even stand-by counsel Tomas [sic] Fryer was under the impression that the Petitioner was facing first degree assault charges." (*Id.*, Ex. 20 at 15.)

The Commissioner of the Washington Supreme Court agreed with Petitioner that he had raised the plea coercion claim with the trial court. (Dkt. No. 29, Ex. 21 at 2.) The opinion denying discretionary review nonetheless held that his "bald claim of coercion" was insufficient to merit collateral review. (*Id.*)

This history reveals the Washington courts had ample "opportunity to correct alleged violations of [the] prisoner['s] federal rights." *Arrendondo*, 763 F.3d at 1138. At every stage, Petitioner set forth both the facts giving rise to a double jeopardy claim and the legal theory (via case citations) that animated the claim. Although he cited state cases, they were Washington Supreme Court cases applying the double jeopardy prohibition of the Fifth Amendment. *See Schoel*, 54 Wash.2d at 397–98, 341 P.2d 481 (1959); *Ahluwalia*, 143 Wash.2d at 539–40, 22 P.3d 1254 (2001); *Linton*, 156 Wash.2d at 782–84, 132 P.3d 127 (2006). Respondent does not grapple with these aspects of the record, appearing to rely entirely on the fact that the phrase "double jeopardy" does not appear in petitioner's filings. (*See* Dkt. No. 49 at 12–13.) But Respondent offers no case law to support its interpretation of exhaustion doctrine, which would hold pro se litigants to a stringent standard for the convenience of courts that neglect to check case citations. Petitioner has exhausted his double jeopardy claim.

### B. Clearly Established Federal Law

Petitioner alleges he was prosecuted in violation of the Double Jeopardy Clause when he was re-charged with first-degree assault, a crime of which Petitioner further alleges previously been impliedly acquitted at trial. The principle that the implied acquittal prohibits subsequent prosecution under the Double Jeopardy Clause was explained by the Supreme Court as long ago as 1898. *See Selvester v. United States*, 170 U.S. 262, 269, 18 S.Ct. 580, 42 L.Ed. 1029 (1898) ("Doubtless, where a jury, although convicting as to some, are silent as to other, counts in an indictment, and are discharged without the consent of the accused, as was the fact in the Dealy Case, the effect of such discharge is 'equiv-

alent to acquittal,' because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent.").

This principle was reaffirmed in a context identical to Petitioner's in *Green v. United States,* where the implied acquittal occurred as a result of being convicted of a lesser included charge accompanied by jury silence on the greater charge. *See Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). To the extent that Respondent draws a distinction between merely being charged impermissibly and proceeding to a full trial on the impermissible charge (*see* Dkt. No. 54), that distinction is not found in the case law. *See, e.g., United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (affirming a district court's grant of a motion to dismiss an indictment containing charges which violated the Double Jeopardy Clause).

This Court requested additional briefing in part to determine whether Petitioner was indeed acquitted of the first-degree assault charge when his jury did not reach a verdict. Respondent conceded, "The trial minute records [ . . . ] do not indicate splits or divisions in not reaching the verdict of the first degree assault. As *Brazzel [v. Washington,* 491 F.3d 976 (9th Cir. 2007) ] and *Green [v. United States]* indicate, subsequent prosecution on the charge the jury implicitly acquits is a double jeopardy violation." (Dkt. No. 49 at 13.) Respondent proceeded to explain why this problem was cured or avoided by Petitioner's ultimate guilty plea on second degree assault (*id.*)—an issue the Court will address further below.

■ Supreme Court cases available at the time of the state court's decisions on Petitioner's personal restraint petition

clearly establish that Petitioner was prosecuted in violation of the Double Jeopardy Clause when he was charged on remand with first degree assault, a crime of which he had previously been impliedly acquitted. Petitioner has thus fulfilled AEDPA's prerequisite that that the adjudication of his double jeopardy-related arguments resulted in state court "decision[s] that [were] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

### C. Guilty Plea

■ Once the "contrary to" prong is met for a particular point of law, the Court analyzes the constitutional question without the deference that AEDPA otherwise requires. *See Frantz,* 533 F.3d at 735. Respondent claims the fact that the State eventually charged Petitioner with second degree assault and Petitioner entered a plea of guilty on that charge cures the double jeopardy error. (*See* Dkt. No. 54 at 2.) It is true that a "voluntary and intelligent"

> guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea [ . . . . ]

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Double jeopardy claims are treated like other constitutional claims in that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to

reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

Petitioner was proceeding pro se with the assistance of standby counsel at the time of his plea. (*See* Dkt. No. 29, Ex. 19 at 4.) Unfortunately, Petitioner's standby counsel, Mr. Fryer, provided Petitioner with inaccurate information about the charge Petitioner could legally face (due to the double jeopardy bar) if he chose to go to trial. Mr. Fryer provided Petitioner with an affidavit that became part of the record before the state Court of Appeals in which he explained that he had informed Petitioner of the standard range sentence that would be imposed for conviction of first degree assault at trial (240–138 months) compared to second degree assault (63–48 months), and stated, "While I can not [sic] speak to the defendant's thought process as to accepting or rejecting plaintiff's offer to plead guilty to assault in the second degree. [sic] Presumptively, the information I provided him as to the consequences of pleading guilty to assault in the first degree factored into his decision to plead guilty to the amended charge." (Dkt. No. 29, Ex. 17, Appx. K.) Had Mr. Fryer been acting as Petitioner's formal counsel at the time of the plea, this "gross mischaracterization of the likely outcome presented in [the] case, combined with the erroneous advice on the possible effects of going to trial, [would] fall[ ] below the level of competence required of defense attorneys." *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir.2007).

■■■■ "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir.2002) (alteration in original). The standard for determining the plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Regardless of whether Petitioner can claim ineffective assistance on the part of standby counsel, it is clear that due to the misinformation he received, Petitioner did not understand the charges he was facing or the likely outcome of trial. *See Bradshaw v. Stumpf*, 545 U.S. 175, 182, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (stating a "guilty plea would indeed be invalid if [the defendant] had not been aware of the nature of the charges against him"); *cf. Iowa v. Tovar*, 541 U.S. 77, 92, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (noting that an uncounseled defendant had "never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty").

At the heart of the Due Process clause is a concern with the reliability of proceedings that permit the government repeated attempts at conviction:

> [A] need for reliability accords with one of the central concerns animating the constitutional prohibition against double jeopardy. As the Court explained in *Green v. United States*, the Double Jeopardy Clause prevents States from "mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Monge v. California*, 524 U.S. 721, 732, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (citation omitted). The filing of the first-degree assault charge placed Petitioner at a grave disadvantage in the plea bargaining pro-

cess that undercut the reliability of the resulting plea.

█ Petitioner is thus entitled to habeas relief on the double jeopardy claim even though he ultimately pleaded guilty to a permissible second degree assault charge.

## V. *Certificate of Appealability*

In the alternative, Petitioner seeks a certificate of appealability. (Dkt. No. 43 at 1, 3.) Because the Court agrees with Petitioner on the two central grounds of his Motion for Reconsideration and is granting the relief sought, the request for a certificate of appealability is moot.

### *Conclusion*

The Court GRANTS the Motion for Reconsideration, the Court's prior order and judgment are VACATED, and the Court DECLINES to adopt the Report and Recommendation. The Court GRANTS the Petition for Habeas Corpus on the grounds of waiver of the right to counsel and double jeopardy and DENIES the request for a certificate of appealability as moot. Petitioner's plea of guilty to second degree assault is vacated; Respondent shall release Petitioner from state custody on the second degree assault sentence within 90 days of the date the judgment herein becomes final, unless the State of Washington elects to prosecute Petitioner on second degree assault within 90 days of the final judgment.

The clerk is ordered to provide copies of this order to all counsel.